**In re Thao Tran NGUYEN and Andrew Hunglam Nguyen, Debtors.**

**Joel J. Margolis, Appellant.**

**BAP Nos. NC–10–1124–En Banc. Bankruptcy No. 09–10549.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 17, 2010.

Decided Feb. 7, 2011.

Michael P. Bradley of Murphy, Pearson, Bradley & Feeney argued for the Appellant.

Before: PAPPAS, DUNN, JURY, MARKELL, HOLLOWELL, and KIRSCHER, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

Joel J. Margolis (Margolis) appeals the disciplinary sanctions that the bankruptcy court imposed against him as a result of his unprofessional conduct. We AFFIRM.

## I. FACTS[1]

Margolis is a sole practitioner with a law office in Santa Clara County, California. He has practiced law, in good standing, for almost 20 years. Approximately half of his practice is devoted to representing consumer debtors, almost all of whom are members of Northern California's South Bay Vietnamese community. Margolis advertises for clients in Vietnamese language newspapers. While Margolis does not

---

1. The majority of the facts are taken from declarations submitted by Margolis in response to the bankruptcy court's order to show cause why Margolis should not be sanctioned, as well as from Margolis' direct testimony given in the Debtors' nondischargeability trial.

speak Vietnamese, his wife is Vietnamese, and she is active in assisting Margolis in his practice as office manager and interpreter. She is not an attorney.

Sometime in late 2008, Thao Than Nguyen and Andrew Hunglam Nguyen (the Debtors) responded to Margolis' advertisement regarding bankruptcy services. They met almost exclusively with Margolis' wife, provided her with their financial information and documentation, and, according to the Debtors, received advice from her.

On February 20, 2009, the Debtors went to Margolis' office to sign the chapter 7[2] bankruptcy petition, schedules, and statement of financial affairs (the February Schedules). However, the February Schedules were not completed when the Debtors arrived. The Debtors signed them even though they were incomplete. The Debtors subsequently went to Margolis' office to review the completed February Schedules. They found some errors, made several handwritten corrections to the information contained on them, and assumed those corrections would be made.

On March 2, 2009, Margolis filed, on behalf of the Debtors, a chapter 7 bankruptcy petition and a set of schedules and statement of financial affairs (the Bankruptcy Schedules), which did not contain the Debtors' changes or the Debtors' original signatures.

During the course of the bankruptcy case, the chapter 7 trustee (Trustee) discovered the following assets, which were not disclosed on the Bankruptcy Schedules: (1) a bank account containing $24,000; (2) a 2008 Mercedes Benz; (3) a condominium; and (4) a storage unit containing furniture from the Debtors' business. Due to these omissions, and other conduct by the Debtors in concealing and removing furniture from the undisclosed storage unit, the Trustee filed a complaint to deny the Debtors a discharge under § 727(a)(2), (a)(3) and (a)(4) (the Complaint). In the Complaint, the Trustee alleged that the Debtors concealed assets, failed to preserve records, and filed false bankruptcy schedules and statements of financial affairs.

A trial on the Complaint was held January 20, 2010 (the Trial). In partial defense to the Complaint, the Debtors asserted that they were counseled by Margolis' wife regarding whether to schedule the bank account, Mercedes, and furniture business. Furthermore, they alleged that they had provided corrections to the February Schedules, which were not reflected in the filed Bankruptcy Schedules, and that some of the so-called undisclosed assets were not actually omitted from the schedules but listed in the wrong places or in an incomplete manner.[3] Finally, they contended that they did not file false schedules because they never reviewed or signed the Bankruptcy Schedules.

Margolis was called as a witness at the Trial and provided testimony about his role and the role of his law office in the Debtors' bankruptcy case, as well as his office practices generally. Margolis' testimony indicated that he had little specific recollection of the Debtors' case. He ad-

2. Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. Reference to the "Local Rules" are to the Local Bankruptcy Rules for the Northern District of California.

3. For example, the condominium was listed as collateral for a secured claim listed on Schedule D, but the condominium was not listed as a real property asset on Schedule A. The furniture business was listed on Schedule I, but not elsewhere.

mitted that he met only briefly with the Debtors and that his non-attorney staff had worked with the Debtors to determine their assets and liabilities and prepare the Bankruptcy Schedules.

After the Trial, on January 22, 2009, the bankruptcy court denied the Debtors a discharge. The denial of a discharge was not based on filing false schedules since it was Margolis who failed to properly counsel the Debtors regarding their bankruptcy case and who filed the unsigned Bankruptcy Schedules. Rather, the bankruptcy court denied the Debtors' discharge because the Debtors lied and actively concealed assets from the Trustee postpetition. Thus, while the bankruptcy court determined there was "no doubt that competent advice of counsel, if followed, would have preserved the [Debtors'] discharge, . . . the absence of proper legal advice [could not] excuse" all of the Debtors' conduct, particularly in removing furniture from the storage unit postpetition. A Judgment Denying Debtors' Discharge was entered February 4, 2010.

Based on Margolis' Trial testimony, the bankruptcy court issued an Order to Show Cause (OSC) on February 8, 2010, as to why Margolis should not be sanctioned (1) pursuant to Rule 9011 for filing schedules not actually signed by the Debtors and (2) because from Margolis' testimony it appeared he was "grossly negligent in [his] representation of the [D]ebtors by failing to discover and schedule business assets of the [D]ebtors and allowing an unlicensed and unqualified person" to counsel the Debtors without meaningful supervision.

The OSC directed Margolis to demonstrate why he should (1) not be required to return all fees paid in the case, (2) not be assessed a monetary fine, (3) not be suspended from bankruptcy practice in the

Northern District of California (the District) until educational requirements could be completed, and (4) not be permanently enjoined from allowing his non-attorney employees to meet with clients without his supervision.

On March 12, 2010, Margolis filed a response to the OSC. Margolis accepted responsibility for the inadequate management of his law office that led to filing unsigned documents and to the failure to disclose all the Debtors' assets. He conceded that his fees should be returned. However, he contended his conduct was the result of inadvertence, not recklessness or intentional misconduct. Margolis argued that the "preferred procedure" under the circumstances was to refer the matter to the Standing Committee on Professional Conduct for the District (the Standing Committee). In the event that the bankruptcy court retained the matter, Margolis argued that sanctions should be limited to an admonishment or reprimand. Additionally, Margolis contended that the attorney-client privilege impeded his ability to fully and fairly respond to the OSC.

A hearing on the OSC was held on March 26, 2010. On April 2, 2010, the bankruptcy court issued a memorandum decision regarding Margolis' conduct (the Sanctions Decision). In the Sanctions Decision, the bankruptcy court directed Margolis to return to the Trustee the fees paid by the Debtors. Pursuant to Rule 9011, the bankruptcy court imposed a $7,500 sanction against Margolis for filing the unsigned Bankruptcy Schedules.[4] Additionally, the bankruptcy court determined that the immediate imposition of disciplinary sanctions was required in order to protect future clients from Margolis' "incompetence and shoddy office practices."

---

4. As long as Margolis paid $2,500 to the Clerk within 20 days and did not file unsigned schedules again, $2,500 of the total fine would be stayed.

Accordingly, the bankruptcy court permanently enjoined Margolis, requiring that he or another licensed attorney conduct the initial client interviews in all bankruptcy cases and that Margolis or another licensed attorney spend at least one hour counseling the debtor before filing bankruptcy schedules. Additionally, the bankruptcy court determined that Margolis should be suspended from practice in the District until he completed at least 10 hours of continuing legal education in bankruptcy law or ethics.

An Order Regarding Conduct of Debtors' Former Counsel (the Sanctions Order) accompanied the Sanctions Decision. The Sanctions Order:

> (1) permanently enjoined Margolis from "filing any bankruptcy case in any court" unless the initial client interview was conducted by an attorney;

> (2) permanently enjoined Margolis from filing "any bankruptcy schedules in any court" unless an attorney spent at least one hour counseling the debtor and making sure all assets and debts were discovered and scheduled;

> (3) permanently enjoined Margolis from allowing his wife or other non-attorney in his office to give legal advice to clients;

> (4) suspended Margolis from bankruptcy practice in the District unless he filed a certificate demonstrating completion of 10 hours of continuing legal education in bankruptcy law;

> (5) transmitted a copy of the Sanctions Decision to the Standing Committee for further proceedings; and,

(6) transmitted a copy of the Sanctions Decision to the U.S. Trustee's Office to initiate a review of Margolis' other cases for improprieties.

Margolis timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(A). *See In re Brooks–Hamilton,* 400 B.R. 238, 244 (9th Cir. BAP 2009) (acts leading to suspension occurred in matter central to administration of bankruptcy case). We have jurisdiction to review the appeal under 28 U.S.C. § 158. *Price v. Lehtinen (In re Lehtinen),* 564 F.3d 1052, 1057 (9th Cir. 2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 739, 175 L.Ed.2d 515 (2009).

## III. EN BANC CONSIDERATION

In *Peugeot v. U.S. Trustee (In re Crayton),* 192 B.R. 970, 980–81 (9th Cir. BAP 1996), the Bankruptcy Appellate Panel (BAP or Panel) adopted the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards)[5] as the minimum standard for determining the reasonableness of sanctions. Under *Crayton,* it is reversible error for a bankruptcy court not to apply the ABA Standards when imposing sanctions.

The BAP questioned the mandatory requirement that each criterion of the ABA Standards be applied in *In re Brooks–Hamilton,* 400 B.R. at 252 n. 18, but had no mechanism for overturning its prior precedent. Because the BAP now has that authority under BAP Rule 8012–2(a), the Panel entered an order directing that this appeal be argued and submitted for decision en banc to consider the continuing viability of *Crayton* as precedent.[6] BAP

---

**5.** The ABA Standards are more formally cited as Joint Committee on Professional Sanctions, Standards for Imposing Lawyer Sanctions, available at http://www.abanet.org/cpr/

regulation/scpd. They are defined and discussed more fully below.

**6.** In accordance with BAP Rule 8012–2(c), the members of the merits panel requested that

Rule 8012–2(a) provides that an en banc hearing may be ordered to maintain uniformity of the Panel's decisions, "including, without limitation, when there is a challenge to an existing precedent of the Panel."

## IV. ISSUES

(1) Whether the holding in *Crayton*, that the failure to apply the criteria of the ABA Standards when imposing sanctions is an abuse of discretion, should be modified or abandoned.

(2) Whether the bankruptcy court abused its discretion in entering the Sanctions Order.

## V. STANDARDS OF REVIEW

■■■ We review sanctions and the terms of a disciplinary order for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 411 (9th Cir.BAP2005), *aff'd*, 564 F.3d 1052 (9th Cir.2009); *In re Crayton*, 192 B.R. at 974–75. The bankruptcy court's choice of sanction is reviewed for abuse of discretion. *U.S. Dist. Ct. for E.D. Wash. v. Sandlin*, 12 F.3d 861, 865 (9th Cir.1993). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard

whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted).

■■■ Additionally, the bankruptcy court's interpretation and application of a local rule is reviewed for abuse of discretion. *In re Lehtinen*, 564 F.3d at 1058. Finally, due process is a question of law that we review de novo. *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 492 (9th Cir. BAP 2002), *aff'd*, 361 F.3d 539 (9th Cir.2004).

## VI. DISCUSSION

■■■ In reviewing attorney disciplinary sanctions we determine whether (1) the disciplinary proceeding is fair, (2) the evidence supports the findings, and (3) the penalty imposed was reasonable.[7] *In re Crayton*, 192 B.R. at 978; *In re Lehtinen*, 332 B.R. at 411; *In re Brooks–Hamilton*, 400 B.R. at 250.

Margolis makes several arguments essentially contending that the bankruptcy court's Sanctions Order was unfair, unsupported by the evidence, and unreasonable. We address his arguments below.

### A. *The ABA Standards*

Relying on *Crayton*, Margolis contends that the bankruptcy court abused its discretion by not applying the ABA Standards in the Sanctions Order.

---

the Panel hear and decide this appeal en banc. Thereafter, en banc consideration was approved by a unanimous vote of the regular members of the Panel, as provided for in BAP Rule 8012–2(d).

7. Margolis's arguments on appeal do not refer to the Rule 9011 monetary sanctions included in the Sanctions Decision and the Sanctions

Order. Therefore, any argument that the bankruptcy court abused its discretion in imposing the monetary fine against him under Rule 9011 is waived. *In re Lehtinen*, 332 B.R. at 410; *see also, O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir.1989).

■ In *Crayton,* the BAP determined that reasonable sanctions are those that apply the ABA Standards. The ABA Standards dictate consideration of four criteria: (1) whether the duty violated was to a client, the public, the legal system, or the profession, (2) whether the attorney acted intentionally, knowingly or negligently, (3) the seriousness of the actual or potential injury caused by the attorney's misconduct, and (4) the existence of aggravating and mitigating factors. 192 B.R. at 980.

■ Aggravating factors justifying an increase in the degree of discipline imposed include considerations of a prior disciplinary offense, multiple offenses, a pattern of misconduct, or a refusal to acknowledge the wrongful nature of the conduct. *Id.* at 981. Mitigating circumstances justifying a reduction in the degree of discipline include the absence of a prior disciplinary record, personal or emotional problems, inexperience in the practice of law, or a timely good faith effort to make restitution or to rectify the consequences of the misconduct. *Id.*

■ *Crayton* requires that bankruptcy courts specifically address each criterion of the ABA Standards when deciding to impose sanctions for attorney misconduct. *Id.; In re Brooks–Hamilton,* 400 B.R. at 252. In this case, the bankruptcy court did not expressly address the ABA Standards. However, the bankruptcy court's findings demonstrate that it effectively considered the first three criteria. It found that Margolis violated his duty to the legal system as well as the public, acted with at least gross negligence, and caused a serious injury to the Debtors (and possible injury to other clients). However, the bankruptcy court did not specifically analyze whether any aggravating or mitigating factors justified an increase or decrease in the degree of discipline imposed.

In *Crayton,* the BAP adopted the ABA Standards because it determined that they "promote[d] the thorough, rational consideration of relevant factors, and help[ed] to achieve consistency when imposing attorney discipline." 192 B.R. at 980. While the ABA Standards do promote a certain level of consistency for attorney discipline, requiring explicit consideration of the ABA Standards in determining the reasonableness of sanctions is too restrictive. As noted in *Brooks–Hamilton,* requiring a bankruptcy court to "slavishly intone" the ABA Standards makes little sense given that sanctions are within the sound discretion of the bankruptcy court, and that deference should be given to bankruptcy courts' choice of sanction in that they have "the inherent power to run the type of courtroom that they believe best serves justice." *Id.* at 255 (Markell, J., concurring).

Furthermore, the ABA Standards, which were developed primarily for non-federal, nonbankruptcy courts by unelected and nonjudicial parties, are ill-adapted to federal bankruptcy proceedings. *Id.* at 256. The ABA Standards were not drafted to address the distinctive context of bankruptcy where, as here, administrative matters rather than litigation may be the focus of an attorney's work. While the ABA Standards remain a helpful guide in the imposition of sanctions, the *requirement* of applying the ABA Standards is inconsistent with the exercise of discretion needed for a bankruptcy court to remedy attorney misconduct, as well as with procedures that certain districts have in place for sanctioning attorneys under their local rules.

Therefore, we modify the holding of *Crayton,* such that the failure of a bankruptcy court to apply each criterion of the ABA Standards in imposing sanctions for attorney misconduct will no longer consti-

tute an abuse of discretion. Bankruptcy courts remain free to consult the ABA Standards when formulating sanctions; however, it is not reversible error if a bankruptcy court does not do so. Having determined that it is not an abuse of discretion for the bankruptcy court not to address the ABA Standards in imposing sanctions, the balance of our decision examines whether the bankruptcy court's sanctions against Margolis were fair, supported by the evidence, and reasonable.

**B. *The Sanctions Proceeding Was Fair***

■ Margolis argues that he was denied due process because (1) the OSC did not identify any specific testimony or documentary evidence that would be used against him at the OSC hearing; and (2) his response to the OSC was constrained by the attorney-client privilege, including that he was unable to call witnesses to testify at the OSC hearing. These arguments are not supported by the record.

**1. *Specific Evidence***

■ Importantly, Margolis did not raise in the bankruptcy court the argument that he was unable to defend properly against the OSC due to the failure of the OSC to identify specific evidence of misconduct. While we generally do not consider arguments raised for the first time on appeal (*In re E.R. Fegert, Inc.*, 887 F.2d at 957), we will do so here because we must review whether the disciplinary proceeding was fair.

■ When an attorney is subject to discipline, he or she has a right to notice and an opportunity to be heard. *In re Ruffalo*, 390 U.S. 544, 551–52, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *In re Lehtinen*, 564 F.3d at 1060. In order to satisfy the requirements of due process in this context, the attorney must receive prior notice of the "the particular alleged mis-

conduct and of the particular disciplinary authority under which the court is planning to proceed" along with an opportunity to respond. *In re DeVille*, 361 F.3d at 548.

Here, the OSC notified Margolis of the conduct charged against him. The bankruptcy court was concerned that Rule 9011 had been violated when Margolis filed unsigned schedules and statements of financial affairs. Additionally, the bankruptcy court was concerned that Margolis was at least grossly negligent by allowing unlicensed, non-attorney staff to counsel the Debtors without meaningful supervision and by failing to discover and schedule assets. The bankruptcy court identified its disciplinary authority under Rule 9011, and, while the bankruptcy court did not explicitly invoke its inherent sanctioning power, the OSC notified Margolis of the possible imposition of sanctions for his unprofessional conduct, which are expressly authorized under the Bankruptcy Code and Local Rules. The record demonstrates that Margolis did not question the bankruptcy court's authority to impose sanctions and that he understood the bankruptcy court's concerns regarding his conduct.

**2. *Attorney–Client Privilege***

Margolis argues that he was unable to fully defend against the OSC because of restrictions imposed by the attorney-client privilege. However, we fail to see how the attorney-client privilege prohibited Margolis from fully responding to the OSC. The OSC notified Margolis that sanctions might be imposed based on the bankruptcy court's concern that Margolis' representation of the Debtors was inadequate because he allowed non-attorney staff to counsel the Debtors and prepare bankruptcy schedules without meaningful supervision. The Sanctions Order was not

entered, as Margolis asserts, simply because of one omission or error such as the failure to schedule the Mercedes Benz. Instead, the sanctions were based on the bankruptcy court's finding that Margolis did not understand the fundamental importance of the bankruptcy schedules and his role in preparing them—a task that is integral to a bankruptcy case and "goes to the integrity of the bankruptcy system."

The bankruptcy court made its findings based on Margolis' own sworn testimony at the Trial about his role in the Debtors' bankruptcy case and about his general office procedures. Importantly, Margolis did not assert the attorney-client privilege during any of his testimony at the Trial.

The record demonstrates that Margolis understood the bankruptcy court's concern regarding his conduct and had an adequate opportunity to explain it. At the hearing on the OSC, Margolis presented argument and evidence in the form of declarations. He also took responsibility for his inadequate office procedures and presented a declaration from an office management consultant retained to improve his practices. As the bankruptcy court noted at the OSC hearing, "It's not like [Margolis] hasn't been allowed to testify. He testified fully and freely, and I would assume that if there were extenuating circumstances, they would have come out in the trial."

We conclude that the due process requirements for a fair proceeding were met because Margolis received advance notice of the particular alleged misconduct and potential sanctions. Margolis prepared a written response, provided declaration testimony, and appeared at the OSC hearing to present his arguments and explanations for his conduct. He was, therefore, provided the requisite notice and opportunity to be heard.

## C. *The Bankruptcy Court's Findings Of Fact Were Supported By The Evidence*

 Margolis argues that "there is not one scintilla of evidence that he engaged in any recurring unprofessional conduct" that justified the bankruptcy court's decision to impose sanctions against him. Additionally, Margolis contends there were other factual errors in the Sanctions Decision and the Sanctions Order, including that: (1) the Vietnamese community was victimized by Margolis; (2) Margolis did not interview the Debtors himself; and (3) he knew about the Mercedes but removed it from the Bankruptcy Schedules.

At the OSC hearing, the bankruptcy court stated that it was concerned that Margolis did not understand the fundamentals of how to represent a debtor and that it merely "came home to roost" in the Debtors' case. The bankruptcy court found that Margolis lacked a basic understanding of the responsibilities of an attorney for a chapter 7 debtor and that "some action was necessary to protect other debtors" from his professional shortcomings. Thus, the bankruptcy court's finding of the "recurring nature" of Margolis' conduct was not based on the particular failures associated with the Debtors' case, but on Margolis' own testimony regarding his general office practices, which implicitly covered prior cases.

The Trial testimony of Margolis revealed that it was Margolis' practice to delegate client interviews and intake of financial information to his wife or other non-attorney staff. He testified that he usually does not go over a debtor's financial information with his clients in much detail, but that his wife or staff does. He also testified that his wife makes the tentative decisions regarding accepting clients and has significant input in deciding

whether a chapter 7 or 13 case should be filed.

These practices were evidenced in the Debtors' case by Margolis' testimony that he "pretty much" delegated the whole task of putting the schedules together to his wife and staff and spent only about 15 minutes with the Debtors "in meandering conversation" reviewing the information contained with their petition.

As far as the Mercedes is concerned, Margolis admitted that his staff was aware of its existence early on. He stated at the Trial that he personally did not know about the Mercedes prior to filing the petition because he "was out of the loop."

As a result, the bankruptcy court found that Margolis' testimony led to the conclusion that he did not take a sufficiently active role in working with his clients to ascertain all of their assets and liabilities and that he exhibited a cavalier attitude toward the accuracy of bankruptcy schedules. The bankruptcy court found this attitude set the tone for the office and allowed for an environment that ultimately led to the denial of the Debtors' discharge. Such unprofessional conduct, the bankruptcy court reasoned, combined with the fact that Margolis' practice drew heavily from the Vietnamese population in the South Bay area, that he advertised in Vietnamese periodicals, and that he had filed over 100 bankruptcy cases, could lead to "contin[ued] victimization of the Vietnamese community" if the bankruptcy court did not immediately impose disciplinary sanctions.

While the term "victimization" may be strong, there is evidence in the record that potential debtors from the Vietnamese community could be harmed through Margolis' office practices. Findings of fact are

clearly erroneous if they are illogical, implausible, or without support in the record. Here, there is ample evidence to support the bankruptcy court's findings that underlay the Sanctions Decision and Sanctions Order.

**D.** *The Sanctions Order Was Reasonable*

Margolis makes several arguments as to why the Sanctions Order was unreasonable, including that the bankruptcy court failed to address the ABA Standards. Even though we have determined that application of the ABA Standards is no longer required, reasonableness continues to require that the sanction imposed be within the scope of the bankruptcy court's authority and that the sanction be tailored to address the misconduct. Therefore, we address Margolis' remaining arguments challenging the Sanctions Order.

1. *Standing Committee Referral*

Margolis contends that the bankruptcy court abused its discretion by imposing any sanctions at all. He argues that the bankruptcy court should have referred the matter to the Standing Committee and that the BAP should establish a bright-line rule that all disciplinary matters be referred to the Standing Committee.[8] However, we decline to establish a rule that interferes with the bankruptcy court's inherent authority, especially when the Local Rules do not restrict that authority.

Bankruptcy courts have the inherent authority to regulate the practice of attorneys who appear before them. *Chambers v. NASCO, Inc.*, 501 U.S. at 43–45, 111 S.Ct. 2123 (federal courts are vested with inherent powers to manage their cases and courtrooms and to maintain the

8. We note, however, that it would be impossible to establish such a rule because not all judicial districts in the Ninth Circuit have standing committees.

integrity of the judicial system); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284–85 (9th Cir.1996). Bankruptcy courts also have express authority under the Code and the Rules to sanction attorneys, including disbarment or suspension from practice. *See In re Lehtinen* 564 F.3d at 1058, 1062; 11 U.S.C. § 105(a); Rule 9011 and Local Rule 1001–2 (incorporating N.D. Cal. Civ. R. 11–1 through 11–9).

 "There is no uniform procedure for disciplinary proceedings in the federal system." *In re Lehtinen*, 564 F.3d at 1062. As a result, "individual judicial districts are free to define the rules to be followed and the grounds for punishment." *Id.* The bankruptcy courts in the District have adopted Civil Rule 11–6(a)[9] through its Local Rule 1001–2. Pursuant to that rule, the bankruptcy court is empowered to supervise and discipline attorneys. If the bankruptcy court finds that an attorney has engaged in unprofessional conduct, the court "may do any or all" of the following: (1) initiate proceedings for civil or criminal contempt; (2) impose other appropriate sanctions, (3) refer the matter to the District's disciplinary authority, (4) refer the matter to the Standing Commit-

tee, or (5) refer the matter to the Chief Judge. N.D. Cal. Civ. R. 11–6(a).

 Here, the bankruptcy court, consistent with Local Rule 1001–2, imposed appropriate disciplinary sanctions and referred the matter to the Standing Committee for further proceedings. Given that the plain language of the Local Rule does not restrict the bankruptcy court's inherent authority and provides the bankruptcy court with a non-exclusive list of discretionary measures for imposing sanctions, we cannot conclude that the bankruptcy court must refer all matters to the Standing Committee. Its choice of which measures to employ under the Local Rule cannot, therefore, be an abuse of discretion.[10] *See In re Lehtinen*, 564 F.3d at 1062.

### 2. *Injunction From Filing*

 Margolis argues that the bankruptcy court exceeded its authority and abused its discretion by enjoining him from filing bankruptcy cases or schedules in "any court" unless he met certain conditions. As discussed above, bankruptcy courts have the inherent authority to run their courtrooms and to supervise the attorneys who appear before them. *Hale v. United States Trustee*, 509 F.3d 1139, 1148 (9th Cir.2007). Similarly, under § 105(a)[11]

---

**9.** Civil Rule 11–6. Discipline.

(a) General. In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do any or all of the following:

(1) Initiate proceedings for civil or criminal contempt under Title 18 of the United States Code and Rule 42 of the Federal Rules of Criminal Procedure;

(2) Impose other appropriate sanctions;

(3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;

(4) Refer the matter to the Court's Standing Committee on Professional Conduct; or

(5) Refer the matter to the Chief Judge for her or him to consider whether to issue an order to show cause under Civ. L. R. 11–7.

**10.** In districts where a local rule mandates a particular procedure, failure to follow that procedure could be an abuse of discretion, but we can only address the facts of the case before us, and on these facts, there is no abuse of discretion.

**11.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua

and the District's Local Rule, the bankruptcy court may discipline or suspend attorneys who practice before the courts in its district in order to protect the integrity of the bankruptcy process. *In re Brooks–Hamilton,* 400 B.R. at 247 (citing 1 COLLIER ON BANKRUPTCY ¶ 8.07[1] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. Rev. 2008)). Because the bankruptcy court's authority is over the attorneys who appear before it in its district, to the extent the bankruptcy court enjoined Margolis from filing in "any court," we clarify its meaning as any court within the District. That reading is also consistent with the OSC and Sanctions Decision.

### 3. *Meeting With Clients And Scheduling Assets*

Margolis argues that it was beyond the bankruptcy court's authority to impose the "potentially onerous obligation to meet for at least an hour with a prospective debtor [which] goes well beyond the duties of a lawyer." Furthermore, he contends that he cannot be held to guarantee debtors' representations in the schedules and statements of financial affairs.

 Local Rule 1001–2 does not circumscribe the bankruptcy court's inherent powers. Thus, the bankruptcy court has the ability to fashion an appropriate sanction for unprofessional conduct.

> The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

*In re DeVille,* 361 F.3d at 553 (applying sanctions under Rule 9011). Under a court's inherent authority, civil penalties may be imposed, which are designed to be either compensatory or to coerce compliance. *In re Lehtinen,* 564 F.3d at 1059; *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1192, 1197 (9th Cir.2003).

 Here, Margolis' testimony revealed his generally lax and hands-off approach to the accuracy of bankruptcy schedules and statements of financial affairs. The bankruptcy court was correct to be concerned with potential injury to the public resulting from these practices. Therefore, it enjoined Margolis from filing schedules unless an attorney conducted the initial client interview and spent at least an hour with the debtor to make sure that assets and debts would be discovered and properly scheduled. Consistent with the bankruptcy court's findings, the sanction was tailored to coerce Margolis into spending time with clients to ascertain a full picture of their financial history, assure the clients' awareness of the importance of correctly completing bankruptcy documents, and to assure that Margolis has an adequate understanding of his clients' needs. The sanction was not meant to shift the burden of responsibility for the truthfulness of the information from debtors to Margolis. Accordingly, we conclude that the bankruptcy court did not abuse its discretion here because the Sanctions Order does not mean that Margolis must *certify* the validity and accuracy of debtors' schedules.

As for Margolis' assertion that it is unduly burdensome to be required to spend a minimum of one hour with his clients, we agree with the bankruptcy court that one hour is below the amount of time competent counsel generally spend with their clients. Margolis has chosen to be an

---

sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

attorney and must accept the duties and responsibilities associated with the position.

As we discussed above, we no longer consider it an abuse of discretion for a bankruptcy court not to explicitly address the ABA Standards in imposing sanctions, even though here, the bankruptcy court's findings demonstrate that its decision was consistent with the first three criteria of the ABA Standards. More importantly, the bankruptcy court acted within its authority and in a manner consistent with the Local Rule regarding attorney sanctions. Its choice of sanctions was tailored to address Margolis' misconduct. Therefore, the Sanctions Order was reasonable.

## VII. CONCLUSION

We conclude that the disciplinary sanctions imposed against Margolis were fair, based on evidence supported in the record, and reasonable under our modification of *Crayton*. Having applied the correct legal rule, the bankruptcy court's application of the facts to the law was not illogical, implausible, or without support in the record. Therefore, the bankruptcy court did not abuse its discretion when it entered the Sanctions Order. We AFFIRM.