NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP Nos. CC-12-1306-DKiPa and |
| | )                CC-12-1307-DKiPa |
| M.P. CONSTRUCTION COMPANY, INC., | )            (Related Appeals) |
| | ) |
|                 Debtor. | ) Bk. No. 2:11-bk-40293-BR |
| _____ | ) |
| | ) |
| M.P. CONSTRUCTION COMPANY, INC.; | ) |
| GREGORY M. SALVATO, | ) |
| | ) |
|                 Appellants, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| SHERMAN WONG; CAROLYN WONG, | ) |
| | ) |
|                 Appellees. | ) |
| _____ | ) |

Argued and Submitted on February 22, 2013
at Pasadena, California

Filed – March 4, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:     Gregory M. Salvato of Salvato Law Offices appeared and argued for Appellants, M.P. Construction Company, Inc. and Gregory M. Salvato; Debby L. Watson of Public Agency Law Group appeared and argued for Appellees, Sherman Wong and Carolyn Wong.

Before:   DUNN, KIRSCHER and PAPPAS, Bankruptcy Judges.

---

[1]     This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

After finding that a corporate chapter 7[2] petition was filed "completely without legal foundation," the bankruptcy court dismissed the bankruptcy case pursuant to § 707(a) and imposed monetary sanctions on the corporation and its attorney. We AFFIRM.

## I. FACTS

Appellant M.P. Construction Company, Inc. ("MP Construction") was formed for the purpose of conducting a "family-owned" construction business. The shareholders of MP Construction are Mario Piumetti and his wife, Ana Piumetti.[3] The California Contractors State License Board issued contractor's license number 710014 to MP Construction on July 20, 1995. For purposes of the required contractor's bond, Mr. Piumetti was designated the "Responsible Managing Officer."[4]

On November 22, 2005, appellees Sherman and Carolyn Wong contracted with MP Construction to perform a high-end residential remodel of their home. The Wongs paid MP Construction $1,614,563.84 for services which originally were estimated to cost $995,000.

---

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

[3]  Although Mrs. Piumetti holds 50% of the shares of MP Construction, she apparently was not involved in the operation of the business.

[4]  A corporation qualifies for a contractor's license through a responsible managing officer ("RMO"). Cal. Bus. & Prof. Code § 7068(b)(3). Mr. Piumetti was the RMO for MP Construction.

2

MP Construction did not satisfactorily complete the remodel.

After MP Construction sued the Wongs to collect approximately $75,000 in unpaid invoices, the Wongs counterclaimed for breach of contract, asserting, inter alia, defective work and excessive billing. On August 15, 2009, following a week-long arbitration, a panel of three arbitrators issued an interim arbitration award ("Interim Award") in favor of the Wongs in the amounts of $308,711.86 for project costs and $218,646.00 for labor overcharges. Against these amounts, MP Construction was credited $75,909.12 for its unpaid invoices owed by the Wongs. A final arbitration award ("Arbitration Award") was issued November 4, 2009, awarding the Wongs an additional $149,873.47 for arbitration costs and attorneys' fees. On January 7, 2010, the Los Angeles Superior Court granted the Wongs' petition to confirm the Arbitration Award and entered judgment ("Judgment") against MP Construction in the amount of $601,322.22. The Wongs have collected only $12,500 on the judgment; the source of those funds was MP Construction's surety.[5]

As a result of the Judgment, the contractor's license held by MP Construction was suspended.[6]

_____

[5] A condition precedent to the issuance of a contractor's license is that the applicant or licensee file a contractor's bond in the amount of $12,500. Cal. Bus. & Prof. Code § 7071.6(a).

[6] The failure by a licensee to maintain a sufficient bond, including a bond in an amount of any unsatisfied judgment, subjects the contractor's license to suspension or revocation. See Cal. Bus. & Prof. Code § 7071.15. Further, § 7071.11(b) precludes the renewal, reissuance, or reinstatement of a contractor's license
(continued...)

3

On July 31, 2009, a new entity, Avenue 35 Construction Co., Inc. ("Avenue 35"), was incorporated by the three adult children of Mario and Ana Piumetti - Domenica Piumetti, Mario Piumetti, Jr., and Pietro Piumetti, each of whom was a one-third shareholder of Avenue 35. On August 13, 2009, Avenue 35 entered into a purchase agreement with MP Construction pursuant to which Avenue 35 acquired MP Construction's assets for the price of $120,000. To facilitate this transaction, Mr. Piumetti loaned each of his children $40,000.[7] The $120,000 purchase price received by MP Construction was used to pay undocumented loans Mr. Piumetti asserted he was owed by MP Construction. Additionally, Mr. Piumetti thereafter sold all of the transferred assets to third parties, ostensibly on behalf of Avenue 35. However, none of the funds received from these sales was deposited to the bank accounts of either Avenue 35 or MP Construction.

Sometime thereafter, Mr. Piumetti attempted to transfer his contractor's license from MP Construction to Avenue 35. Again, his

---

[6](...continued)
while a judgment in excess of the contractor's bond remains unsatisfied.

[7]     For a quick summary and citations to the record relating to the creation of Avenue 35 and the transactions between and among Mr. Piumetti, his children, Avenue 35, and MP Construction, see n.3 in the Wongs' response brief filed in CC-12-1307 (the appeal from the order granting the motion to dismiss). A number of these facts were the subject of MP Construction's evidentiary objections to the declaration of the Wongs' counsel, many of which were sustained. As a result, MP Construction and Mr. Salvato oppose the Wongs' reference to these facts on appeal.

4

efforts were hampered by the California Business and Professions Code. In particular, § 7071.17(j) precludes an entity from receiving a license if the RMO for that entity was affiliated with a judgment debtor whose license was suspended based on an unsatisfied judgment. Section 7071.17(f) contains an exception where the unsatisfied judgment has been discharged in a bankruptcy proceeding.

On July 15, 2011, MP Construction filed a voluntary chapter 7 petition. Schedules A and B filed with the petition reflect that MP Construction had no assets as of the petition date. MP Construction responded to question 1 of the Statement of Financial Affairs by disclosing that the business had been sold on August 12, 2009. On August 30, 2011, Mr. Piumetti filed a Certificate of Dissolution for MP Construction with the California Secretary of State. The certificate states that: (1) "the corporation has been completely wound up and is dissolved," (2) "the corporation's known debts and liabilities have been paid as far as its assets permitted," and (3) "the known assets have been distributed to the persons entitled thereto."

The Wongs utilized the discovery procedures available to them pursuant to Rule 2004 to depose Mr. Piumetti, Mrs. Piumetti, Domenica Piumetti, and Mario Piumetti, Jr. With the aid of evidence gleaned from these depositions, the Wongs file a motion to dismiss MP Construction's bankruptcy case on the grounds that the Petition was not filed in good faith where a corporation was not entitled to a chapter 7 discharge and where MP Construction had no assets to distribute to its creditors on the petition date. The Wongs also

5

filed a motion for sanctions against MP Construction and its attorney, Appellant Gregory M. Salvato, pursuant to Rule 9011.[8]

MP Construction opposed the Wongs' motions, asserting that it had a valid bankruptcy purpose when it filed the Petition such that neither dismissal nor sanctions were appropriate. In his declaration in support of the opposition, Mr. Piumetti stated that, as an officer and shareholder of MP Construction, he caused the Petition to be filed because:

> a. [MP Construction] could not pay its debts and outstanding obligations at the time of the petition date;
>
> b. to stop the pending judgment collection actions against [MP Construction] where [MP Construction] had limited resources and no assets; and
>
> c. to reinstate and transfer [MP Construction's] California State contractor's license to [Avenue 35].

Decl. of Mario Piumetti at 1:12-18. Mr. Piumetti further explained that he had been advised by the California Contractors State License Board that because of MP Construction's inability to satisfy the Wongs' money judgment against it, MP Construction would have to file a bankruptcy case before MP Construction's contractor's license could be transferred to Avenue 35. Mr. Piumetti stated that after the Petition had been filed, the State of California issued a contractor's license to Avenue 35 and that he was the qualifying

---

[8] The Wongs also filed a motion for relief from stay ("Stay Motion"). Although MP Construction opposed the Stay Motion, it has not appealed the order granting the Stay Motion.

6

individual, the RMO, for purposes of the contractor's bond.[9]

Mr. Salvato filed his own declaration to support the opposition to the sanctions motion in which he identified the reasons he had filed MP Construction's Petition:

a. to stay the ongoing and apparently endless state court judgment debtor proceedings and to bring all such proceedings into one forum;

b. to disclose and have the Debtor certify under oath that it truly had no assets, which fact the [Wongs] would not accept or believe;

c. to end the corporate life of [MP Construction] which had sold its assets and had no further business, and its principal was retiring and in ill health; and

d. most importantly, because Mr. Piumetti had been advised by the California Contractors State License Board that because he had not paid on a contractor's license bond, he could not transfer his license to another entity (the company formed by his children, [Avenue 35]) unless and until [MP Construction] had filed a bankruptcy proceeding.

Decl. of Gregory M. Salvato, Esq. at 1:22-2:6 (emphasis in original). Mr. Salvato further stated that he had contacted the California Contractors State License Board and was advised that even though MP Construction would not be eligible for a discharge in bankruptcy, a bankruptcy filing nevertheless would be required to effect a transfer of MP Construction's contractor's license to another entity.[10] Id. at 2:7-11.

_____

[9] The bankruptcy court sustained the Wongs' hearsay objection to Mr. Piumetti's declaration regarding what he had been told by the California Contractors State License Board.

[10] The bankruptcy court sustained the Wongs' hearsay
(continued...)

7

The bankruptcy court opened the hearing on the Wongs' motions by asking Mr. Salvato whom he was representing, MP Construction or Mr. and Mrs. Piumetti. Ultimately, the bankruptcy court ruled that there was "absolutely . . . no legitimate purpose" for MP Construction's Petition. Instead, the bankruptcy court found that the Petition was filed to benefit only the Piumettis. Specifically, the purpose of the Petition was to stop the Wongs' collection efforts[11] and to effectuate the transfer of the construction license to Avenue 35, which the bankruptcy court found to be "totally outrageous." Based upon those findings, the bankruptcy court dismissed MP Construction's case. The bankruptcy court also granted the Wongs' motion for sanctions under Rule 9011, and awarded the Wongs $20,446.00, representing $20,000 of attorneys' fees and $446 in costs the Wongs incurred as a result of the improper bankruptcy filing. The sanctions award was entered,

[10](...continued) objection to Mr. Salvato's declaration regarding what he had been told by the California Contractors State License Board.

[11] Although the Judgment was against MP Construction only, the Piumettis, as officers and shareholders of MP Construction, were the persons to whom the Wongs necessarily looked for information about MP Construction's affairs. Nevertheless, the Piumettis appear to have construed the Wongs' efforts to trace MP Construction's assets to be harassment of them individually. In their response to the Wongs' motion for relief from stay, the Piumettis, through their corporation, assert: "The [Wongs'] claim has already been reduced to Judgment in the Superior Court. What the [Wongs] are seeking is the ongoing right to continue harassing [MP Construction's] principals despite the fact that [MP Construction] has disclosed its lack of available assets from which any recovery may be made."

jointly and severally, against MP Construction and Mr. Salvato.

MP Construction timely appealed the dismissal of its bankruptcy case. MP Construction and Mr. Salvato's appeal of the sanctions order also was timely filed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Whether the bankruptcy court erred when it determined that cause existed pursuant to § 707(a) to dismiss the chapter 7 case of MP Construction.

Whether the bankruptcy court abused its discretion when it dismissed the no asset chapter 7 case of MP Construction.

Whether the bankruptcy court abused its discretion when it imposed sanctions on MP Construction and Mr. Salvato for filing the Petition without a legitimate bankruptcy purpose.

## IV. STANDARDS OF REVIEW

We review issues of statutory construction and conclusions of law de novo. Ransom v. MBNA Am. Bank, N.A. (In re Ransom), 380 B.R. 799, 802 (9th Cir. BAP 2007), aff'd, 577 F.3d 1026 (9th Cir. 2009), aff'd, 131 S.Ct. 716 (2011). In the context of a motion to dismiss, first "we review de novo whether a type of misconduct can constitute 'cause' under § 707(a)." Sherman v. SEC (In re Sherman), 491 F.3d 948, 969 (9th Cir. 2007). Then we review the bankruptcy court's decision to grant a motion to dismiss for "cause" for an abuse of discretion. Id.

9

We review all aspects of an award of sanctions for an abuse of discretion. <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990); <u>Price v. Lehtinen (In re Lehtinen)</u>, 332 B.R. 404, 411 (9th Cir. BAP 2005), <u>aff'd</u>, 564 F.3d 1052 (9th Cir. 2009); <u>In re Nguyen</u>, 447 B.R. 268, 276 (9th Cir. BAP 2011)(en banc).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. <u>Id.</u> Then, we review the bankruptcy court's fact findings for clear error. <u>Id.</u> at 1262 & n.20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" <u>Id.</u>

V. DISCUSSION

I. <u>The Bankruptcy Court Did Not Abuse Its Discretion When It Dismissed MP Construction's Bankruptcy Case</u>

Section 707(a) authorizes a bankruptcy court to dismiss a chapter 7 case "for cause":

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days of such additional time as the court may allow after the filing of the petition commencing such case, the information required by

10

paragraph (1) of section 521(a), but only on a motion by the United States trustee.

It is not disputed that subparagraphs 1, 2 and 3 are not the "cause" for which the bankruptcy court dismissed MP Construction's case.

As with many of the Appellants' arguments in these appeals, we find troubling Appellants' apparent suggestion that, inversely, the mere absence of these reasons entitles them to some inference that there is not cause for dismissal.  See MP Construction's Opening Brief in BAP No. CC-12-1397 at 19:25-20:9; 26:16-25; 30:3-9.  This "suggestion" ignores the word "including" which precedes subparagraphs 1, 2, and 3 of § 707(a), and fails to recognize the body of case law discussing what constitutes cause in the absence of the conditions in subparagraphs 1, 2, and 3.

The Ninth Circuit test for determining whether "cause" exists to dismiss pursuant to § 707(a) is well established:

> If the asserted "cause" is contemplated by a specific Code provision, then it does not constitute "cause" under § 707(a) . . . . If, however, the asserted "cause" is not contemplated by a specific Code provision, then we must further consider whether the circumstances asserted otherwise meet the criteria for "cause" for [dismissal] under § 707(a).

In re Sherman, 491 F.3d at 970 (citing Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1193-94 (9th Cir. 2000)).

No provision of the Bankruptcy Code provides a remedy for the asserted cause, i.e., that the filing of the Petition was improper in the first instance because it provided no benefit to MP Construction.  Thus, under Ninth Circuit precedent, the bankruptcy court was required to determine whether under the

11

circumstances surrounding the filing of the MP Construction bankruptcy case there was misconduct sufficient to constitute "cause" for dismissal. On appeal, "we review de novo whether a type of misconduct can constitute 'cause' under § 707(a)." In re Sherman, 491 F.3d at 969.

As articulated by the bankruptcy court, it is fundamental that bankruptcy relief is available for two overriding reasons: to provide the "honest but unfortunate" debtor a fresh start through the discharge provisions of the Bankruptcy Code, and to provide for the fair and equitable distribution of a debtor's assets to his creditors. See Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198, 1203 (9th Cir. 2005). It is undisputed that MP Construction was not eligible for a bankruptcy discharge.[12] Further, the record establishes with absolute certainty that MP Construction had no assets to distribute to its creditors. Accordingly, the bankruptcy court did not err when it determined that "cause" existed to dismiss MP Construction's case pursuant to § 707(a). The bankruptcy case was filed not for the purpose of securing bankruptcy relief for MP Construction, but for the purpose of protecting and benefitting MP Construction's principals. On this record, the bankruptcy court did not abuse its discretion when it dismissed MP Construction's bankruptcy case.

---

[12] Section 727(a)(1) provides: "The court shall grant the debtor a discharge, unless – (1) the debtor is not an individual . . . ."

12

II.	The Bankruptcy Court Did Not Abuse Its Discretion When It Awarded Sanctions Against MP Construction and Mr. Salvato

Rule 9011 states in relevant part:

(b) Representation to the court

By presenting to the court . . . a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

"The language of Rule 9011 parallels that of [Civil Rule] 11. Therefore, courts analyzing sanctions under Rule 9011 may appropriately rely on cases interpreting [Civil Rule] 11." Winterton v. Humitech of N. Cal., LLC (In re Blue Pine, Inc.), 457 B.R. 64, 75 (9th Cir. BAP 2011) (citing Marsch v. Marsch (In re Marsch), 36 F.3d 825, 829 (9th Cir. 1994)).

Rule 9011(c)(1)(A) generally provides a "safe harbor" to the filing party; he or she can avoid exposure to a sanctions order by withdrawing the offending pleading. The "safe harbor" is created by notice ("Safe Harbor Notice") to the offending party that unless the offending pleading is withdrawn or corrected within 21 days from the date of the Safe Harbor Notice, the noticing party intends to file a

13

motion for sanctions under Rule 9011.  Rule 9011(c)(1)(A) provides an exception for the filing of a petition.[13]  Because the Wongs sought sanctions under Rule 9011 based upon Mr. Salvato's filing of MP Construction's petition the fact that Mr. Salvato was not given a Safe Harbor Notice does not preclude the bankruptcy court from imposing Rule 9011 sanctions against either appellant.

Under Rule 9011, a filing is frivolous if it is "both baseless — lacks factual foundation — and made without a reasonable and competent inquiry." In re Blue Pine, Inc., 457 B.R. at 75 (citing Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1991) (en banc)).  The attorney "has a duty to conduct a reasonable factual investigation as well as to perform adequate legal research that confirms that his position is warranted by existing law (or by a good faith argument for a modification or extension of existing law)." In re Blue Pine, Inc., 457 B.R. at 75 (citing Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002)).  "Thus, a finding that there was no reasonable inquiry into either the facts or the law is tantamount to a finding of frivolous." In re Blue

---

[13]     Rule 9011(c)(1)(A) provides in relevant part:

". . . The motion for sanctions may not be filed with or presented to the court unless, within 21 days after the service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). . . ."

(emphasis added).

Pine, Inc., 457 B.R. at 75 (citing Townsend, 929 F.2d at 1362).

The bankruptcy court must apply an objective standard of reasonableness to determine whether an attorney has violated Rule 9011. G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003) (citing Townsend, 929 F.2d at 1362). The reasonableness of attorney conduct is measured against "the conduct of a competent attorney admitted to practice before the involved court." Valley Nat'l Bank v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1441 (9th Cir. 1991).

The bankruptcy court determined that the filing of the MP Construction Petition was improper (1) because MP Construction would not benefit from the bankruptcy case, and (2) filing the case to effect a transfer of the contractor's license was not a valid purpose. We agree. We do not credit Mr. Salvato's argument on appeal that MP Construction was entitled to utilize a chapter 7 bankruptcy case for a "public burial." As demonstrated by the Certificate of Dissolution filed postpetition for MP Construction with the California Secretary of State, there is a valid process under state law to end the existence of a corporation, an entity created under state law.

"It was never the intent, nor is there any admissible evidence to show that MP Construction filed its bankruptcy to avoid the bond requirement for reinstatement of its California contractor's license." MP Construction's Opening Brief in BAP No. CC-12-1307 at 27:14-16. We find it disingenuous for Mr. Salvato, as counsel for MP Construction, to make this statement in a brief on appeal. In

15

directing the filing of MP Construction's bankruptcy case, it was expressly the intent of Mr. Piumetti to circumvent the requirements of the California Business and Professions Code that the Judgment be paid as a condition to transferring his contractor's license to Avenue 35, not only as evidenced by the declarations Mr. Piumetti and Mr. Salvato filed in opposition to the Wongs' motions, but also as stated repeatedly on the record at the hearing on the motion for sanctions.

Neither do we credit the assertion on appeal that "there is a lack of authority clarifying § 7071.17(f) [of the Cal. Bus. & Prof. Code] and its application in bankruptcy court." Section 7071.17(f) merely recognizes the effect of a discharge in bankruptcy. As no discharge was available to MP Construction, we fail to see how the application of § 7017.17(f) is relevant in this case.

On the record before us, it is indisputable that MP Construction's petition was not filed for any valid bankruptcy purpose. Accordingly, the bankruptcy court did not abuse its discretion when it entered the sanctions order against Mr. Salvato. By its terms, however, Rule 11 relates to the implicit certification made when an offending document is signed. Because both MP Construction and Mr. Salvato signed the Petition, the bankruptcy court did not abuse its discretion when it imposed sanctions jointly and severally against both MP Construction and Mr. Salvato.

MP Construction and Mr. Salvato appeal only the granting of the sanctions motion, not the amount of sanctions awarded. Thus, any issue that the bankruptcy court might have abused its discretion in

16

the amount of the sanctions award has been waived for purposes of this appeal. <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001)(issues not specifically argued in opening brief are waived).

## VI.   CONCLUSION

The bankruptcy court's determination that "cause" existed to dismiss MP Construction's bankruptcy case is supported by the record.  Accordingly, the bankruptcy court did not abuse its discretion when it granted the Wongs' motion to dismiss.  Having determined that the bankruptcy case had been filed for an improper purpose, the bankruptcy court did not abuse its discretion when it granted the Wongs' motion for sanctions against MP Construction and Mr. Salvato.  We AFFIRM the orders of the bankruptcy court.