JURY, Bankruptcy Judge,
Concurring.
I write separately to highlight what this disposition, and the lengthy published opinion of the bankruptcy court in In re Seare, 493 B.R. 158, hold and what they do not hold. Importantly, they do not hold that unbundling representation of a debtor in a nondischargeability adversary proceeding from general representation of that debtor in a bankruptcy case is prohibited. What they do say is that an attorney who wishes to limit her or his scope of bankruptcy representation should be mindful of the ethical minefield he or she must navigate.
I agree with the majority that the bankruptcy judge here did not abuse his discretion in concluding that DeLuca violated numerous sections of the Nevada Rules of Professional Conduct (NRPC) and also failed to comply with certain requirements of the Bankruptcy Code when he unbundled representation of Seare in the St. Rose adversary. The factual findings amply support the conclusion that DeLuca stumbled in that ethical minefield. However, unbundling representation of a consumer debtor in an adversary proceeding is neither prohibited by state ethical standards nor by the Bankruptcy Code. If done correctly, unbundling may be key to competent consumer bankruptcy attorneys providing much needed representation to debtors at an affordable price. Without the ability to unbundle adversaries, the flat fee which a consumer attorney would need to charge for basic bankruptcy representation might become prohibitive and exacerbate the already existing problem of pro se filings.
To be sure, the bankruptcy judge here did not suggest that unbundling was never appropriate. Indeed, in his opinion he describes the background and general acceptance of limited scope representation by the American Bar Association (ABA), which has provided for limited scope in its Model Rules,, the American Bankruptcy Institute (ABI), and by most states in their ethical rules which monitor the performance of lawyers. Seare, 493 B.R. at 183. Despite recognizing this broad acceptance, however, the bankruptcy judge found that DeLuca fell woefully short of complying with the ethical standards which surround unbundling and therefore sanctioned him for this shortcoming. The judge found that unbundling the adversary proceeding in the representation of Seare based on the unique facts of this case was not possible to achieve the reasonably anticipated result of the client. Therefore, I believe it is useful to focus on why this unbundling failed and how a consumer bankruptcy lawyer might avoid the pitfalls which brought down DeLuca.
As highlighted by the bankruptcy judge, both the NRPC and the ABA Model Rules state that an attorney may “limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent.” NRPC 1.2(c); ABA Model Rule 1.2. It was the implementation of this rule from the initial intake interview that tripped DeLuca up *623 because he did not properly define the goal of the representation of Seare: to permanently stop the garnishment on the St. Rose judgment. The failure to recognize this goal was caused by the circumstances described by the bankruptcy judge and the majority and need not be repeated here. In a nutshell, the communication between Seare and DeLuca did not cause DeLuca to recognize that the St. Rose judgment was likely nondischargeable as based on fraud;[14] therefore, his representation would not stop the garnishment permanently unless he defended and won or settled the adversary proceeding. By not making the necessary reasonable inquiry about the judgment, DeLuca’s attempt to unbundle did not achieve the goal of limited scope: to provide a bundle of services reasonably necessary to achieve the client’s reasonably anticipated result. In re Seare, 493 B.R. at 188.
All the other ethical and statutory violations found by the bankruptcy judge flowed from this initial deficiency in the limited scope representation. DeLuca failed to perform competently because he did not identify the goal and provide services to accomplish the goal — i.e. representing Seare in the adversary proceeding, causing the violation of NRPC 1.1. The unbundled services he promised for the agreed flat fee was not a reasonable limited scope, causing the NRPC 1.2 error. He did not obtain informed consent because he relied on a boilerplate Retainer Agreement with legal jargon which, although it described fraud as nondischargeable and that representation in an adversary was not included in the flat fee, did not connect the dots such that Seare was made aware of the risk of accepting such limited scope representation and why it would not achieve his desired result, being free of the St. Rose garnishment. Just Seare initialing every page of the Retainer Agreement did not provide the particularized communication necessary for informed consent. The other violations of the NRPC are similarly tied to failure to identify the goal and provide the services necessary to achieve it.
The Bankruptcy Code violations are founded on the same deficiencies: DeLu-ca’s failure to investigate the St. Rose judgment to determine its nondischargeable nature caused the § 707(b)(4)(c) violation; the failure to get informed consent regarding nonrepresentation in the adversary resulted in the § 526(a)(1) violation (when DeLuca refused to represent Seare at all in the adversary, even for a further fee); and DeLuca violated § 526(a)(3) when he did not fully explain the limitation on the services which the flat fee would buy.[15]
The bankruptcy judge chose to publish his opinion as part of the sanctions of DeLuca “to deter such conduct by all attorneys.” [16] I summarize here my suggestions for such attorneys to avoid violating ethical rules and the Bankruptcy Code when they limit the scope of representation of consumer debtors:
*624 1. At the initial intake interview with the debtor, identify fully and completely the debtor’s goals. Almost by definition, the attorney therefore cannot have a predetermined business practice that excepts representation in adversary proceedings from the services the attorney will render unless the attorney and debtor identify that exception before deciding to commence representation. As noted by the bankruptcy judge, the decision to unbundle must be driven by the debtor’s needs, not the attorneys.
2. The attorney may not rely solely on the debtor’s input to help him or her ascertain the debtor’s goal. Both the ethical rules and the Code require the attorney to conduct a reasonable investigation of the debtor’s assets and liabilities. If the attorney learns that a judgment has been taken against the debtor, the attorney must make reasonable inquiry into the nature of the judgment in order to determine whether it might be subject to nondischargeabilify-
3. If, after ascertaining the debtor’s goals, the attorney believes that limited scope representation is consistent with those goals, the attorney must then fully explain to the debtor the consequences and inherent risks which might arise if an adversary is filed against the debtor and the attorney has not included representation in that proceeding in the unbundled services. Informed consent is just that: informed. The debtor must understand the “legal jargon” and the practical effect on him or her of the limited scope representation before the consent is informed.
4. The attorney must customize the retainer agreement to the goals of debtor. That is not to say that much of the agreement cannot be boilerplate, but boilerplate without the attorney’s active role in its preparation will be insufficient for limited scope representation. Just having the debtor read and initial the agreement does not assure the debtor is giving informed consent.
5. After describing to the debtor the risks of limited scope representation, the attorney must give the debtor the opportunity to “shop elsewhere” for an attorney who will provide full representation before entering into the contractual relationship with the debtor for the limited scope.
6. The attorney should document as fully as possible all the steps taken to comply with these requirements.
Following these suggestions should go a long way to allowing consumer bankruptcy attorneys to unbundle adversary proceeding representation without violating ethical rules.

. It is ironic to me that although every reference to this judgment as being nondischargeable talks about fraud, the grounds under which St. Rose sought nondischargeability were §§ 523(a)(4) and (6), not fraud.

. The violation of § 528 is based on the failure of DeLuca to sign the Retainer Agreement and is not related to the unbundling

.In joining the majority, I also endorse their view that the bankruptcy judge followed the proper procedures and had the authority to impose the sanctions ordered, in accordance with In re Nguyen, 447 B.R. 268 (9th Cir. BAP 2011) (en banc).