**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of: ASTON-NEVADA LIMITED PARTNERSHIP<br><br>        In re,<br><br>--------------------------------------------<br><br>SCOTT CHAPMAN; KURT K. HARRIS; MICHAEL R. MERRITT; HARRIS, MERRITT, CHAPMAN, LTD.,<br><br>        Appellants,<br><br>v.<br><br>U.S. TRUSTEE,<br><br>        Appellee. | No. 08-15792<br><br>D.C.   No. CV-06-00141-BES-PAL<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Brian E. Sandoval, District Judge, Presiding

Argued and Submitted October 5, 2010[*]
San Francisco, California

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Before: FERNANDEZ and SILVERMAN, Circuit Judges, and DUFFY, District Judge.[***]

Appellants Scott E. Chapman, Esq., Kurt K. Harris, Esq., Michael R. Merritt, Esq., and the law firm Harris Merritt Chapman, Ltd. (collectively, "Appellants") appeal from the judgment of the district court entered on February 28, 2008, affirming the judgment of the bankruptcy court (Bruce Markell, B.J.) that sua sponte imposed extensive sanctions against Appellants stemming from work Chapman performed in an underlying Chapter 11 bankruptcy case. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We REVERSE the district court's judgment regarding the sanctions and VACATE the bankruptcy court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

<u>Chapter 11 Bankruptcy Filing and Related Proceedings</u>

On or about July 30, 2004, debtor Aston-Nevada Limited Partnership ("Aston-Nevada"), through its owner, Kerry Rogers, filed for Chapter 11 bankruptcy. Phillip LeVillier, a business associate of Rogers and an unlicensed attorney or paralegal, prepared and signed the bankruptcy petition. Silver State Bank, the sole creditor of the bankruptcy estate, filed a motion for relief from the bankruptcy stay on August 13, 2004. The bankruptcy court set a hearing date on the motion for August 24, 2004.

---

[***] The Honorable Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

As Rogers could not represent the estate pro se, he met with Chapman on August 20, 2004, and retained him to represent the estate in the bankruptcy case. On August 23, 2004, Chapman filed an opposition to Silver State Bank's motion for relief from the bankruptcy stay and appeared on behalf of the estate at the hearing the next day.

Prior to retaining Chapman, Rogers filed the aforementioned bankruptcy petition that revealed that Aston-Nevada had only one asset, a 1999 Porsche 911. This Porsche had been put up as collateral to secure a personal debt that Rogers owed to Silver State Bank. This debt was the subject of an on-going state court action filed by Silver State Bank in an attempt to collect from Rogers. There was a hearing scheduled in the state court action on August 2, 2004, which was stayed by the bankruptcy filing. Silver State Bank sought relief from the stay in order to pursue its collection action in state court.

Hearing on Silver State Bank's Motion for Relief from the Bankruptcy Stay

At the August 24, 2004 hearing on Silver State Bank's motion for relief from the stay, Chapman sought a continuance to familiarize himself with the nature and extent of the bankruptcy estate case. Chapman admitted before the bankruptcy judge that he had not checked the docket in the bankruptcy case or reviewed Aston-Nevada's petition or asset schedules to familiarize himself with the case or assess its viability. The bankruptcy judge asked Chapman at the hearing if the estate was a one-

3

asset estate. Chapman responded that he did not yet know, but assured Silver State Bank that Aston-Nevada would seek immediate dismissal of the petition if he were to discover that the estate was a one-asset estate. The bankruptcy court denied Chapman the continuance and granted Silver State Bank's motion for relief from the stay. Following the hearing, Rogers informed Chapman that the estate only had one asset, the Porsche, and one creditor, Silver State Bank. The next day, August 25, 2004, Chapman filed a motion to voluntarily dismiss the bankruptcy case.

Silver State Bank's Rule 2004 Application

Also on August 25, Silver State Bank filed an application for an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004 examination") of the person most knowledgeable about Aston-Nevada. The bankruptcy court granted the motion that same day and ordered that the Rule 2004 examination occur on September 9, 2004. Chapman informed Rogers, who in turn identified LeVillier as the person most knowledgeable about Aston-Nevada. However, Rogers expressed interest in attending the examination to hear the testimony that LeVillier would give. Chapman requested a one-week continuance, as Rogers was not available on September 9. Silver State Bank assented to a continuance until September 16, 2004, but warned Chapman that no further continuances would be granted. On September 15 or 16, 2004, Rogers informed Chapman that he would not

4

be able to attend the Rule 2004 examination because he was detained out of the country. Consequently, Chapman attended the examination on September 16, 2004, with LeVillier. The Rule 2004 examination left Silver State Bank unsatisfied—LeVillier did not know where the Porsche was at the time of the hearing or if it was then insured. All he could tell Silver State Bank was that he had last seen it on the street near Rogers' house and that it looked clean.

Motions for Voluntary Dismissal and Sanctions

Between August 25 and September 9, 2004, the parties had been engaged in settlement discussions. On September 9, 2004, counsel for Silver State Bank informed Chapman by letter that his August 25 petition for voluntary dismissal was not the proper form and that Chapman should file a proper motion. According to the bankruptcy court, the initial application was "fatally flawed" in that it "contained numerous nonsensical references," was not served on Silver State Bank, and because Chapman did not obtain a hearing date for it.

Chapman filed a proper motion to dismiss on September 20, 2004. The bankruptcy court held a hearing on the motion on October 7, 2004, and granted the motion retroactively to September 27, 2004. In the order, the bankruptcy court expressly retained jurisdiction to hear Silver State Bank's September 24, 2004 motion for sanctions against Aston-Nevada, Rogers, and LeVillier. A hearing date was set

for November 10, 2004.

Sanctions Ordered at the November 10 Hearing

At the end of the hearing on Silver State Bank's motion for sanctions, the bankruptcy court ordered sanctions pursuant to Rule 9011 and its inherent power to manage its affairs, specifically finding that the bankruptcy filing and the handling of the Rule 2004 examination were in bad faith. The bankruptcy court ordered Aston-Nevada, Rogers, and LeVillier jointly and severally liable for Silver State Bank's attorneys' fees but imposed no non-monetary sanctions on them. During the hearing, the bankruptcy judge expressly stated that no sanctions or monetary damages were ordered against the attorneys for either side in connection with Silver State Bank's motion for sanctions. No further hearing was set at that time.

March 21 Opinion and Order to Show Cause

On March 21, 2005, the bankruptcy court issued its first opinion on sanctions. It memorialized the court's oral order and imposed monetary sanctions against Rogers, LeVillier, and Aston-Nevada, jointly and severally, in the amount of $12,108.50, representing Silver State Bank's attorneys' fees, and added to its oral order sua sponte an order to show cause why sanctions should not issue against Chapman and Harris Merritt Chapman, Ltd. The opinion, characterized by the court as its "findings of fact and conclusions of law under Fed. R. Bankr. Pro. 7052," and

6

filed publicly upon being issued, extensively chastised Chapman and Harris Merritt Chapman, Ltd. for having "jointly conspired" with Rogers, Aston-Nevada, and LeVillier and for "being complicit in [the debtor's] ruse" to present someone other than the person most knowledgeable at the Rule 2004 examination. The March 21 opinion also speculated that Chapman may have ghost-written the petition for the debtor. Further, the opinion reprimanded Chapman and his firm for ever having filed an opposition to Silver State Bank's motion for relief from the stay. The bankruptcy court based its conclusion on the erroneous finding that Rogers had told Chapman that the estate had one asset <u>before</u> the hearing on Silver State Bank's motion for relief from the stay, when the evidence is clear that Chapman did not know the estate had only one asset until <u>after</u> the hearing.

<u>Appellants' Response to the Order to Show Cause and the Subsequent Hearing</u>

On April 29, 2005, Appellants responded to the issues raised in the March 21 opinion. In their response, Chapman and Harris Merritt Chapman, Ltd. challenged the bankruptcy court's characterization of their representation and requested a hearing. The bankruptcy court held a hearing on the issue of sanctions against Appellants on June 17, 2005. The court heard testimony from Chapman, Merritt, and Richard Young, Esq., an attorney licensed in Nevada who had worked with Chapman in the past. Chapman and Merritt explained that their intention after determining that the

case did not belong in bankruptcy court, was to dismiss the case as quickly as possible. As evidence, they pointed to Chapman's near-immediate filing of a motion to dismiss, albeit faulty, the day after the hearing on Silver State Bank's motion for relief from stay and his efforts to resolve the case via settlement. Chapman and Merritt also testified that they had learned to be more selective in accepting cases, less likely to accept cases on short notice, and more likely to do due diligence before signing a pleading or filing a motion. The bankruptcy judge seemed at least somewhat receptive to Chapman and Merritt's arguments.

January 25 Opinion and Order on Sanctions

On January 25, 2006, the bankruptcy court issued its final opinion and order on sanctions against Chapman and Harris Merritt Chapman, Ltd. Despite seeming somewhat receptive to their arguments at the hearing, Chapman and Harris Merritt Chapman, Ltd. were heavily sanctioned, including:

> (1) $9,640 in monetary sanctions pursuant to the court's inherent power;
> (2) public reprimand in the form of the publication of the court's opinion;
> (3) a prohibition on Chapman and any attorney from Harris Merritt Chapman, Ltd. from appearing or filing any document in the Bankruptcy Court for the District of Nevada unless he or she
> (a) first files a declaration stating that, during the twenty-four months immediately preceding the desired filing or appearance, he or she has
> (i) taken eight hours of continuing legal

8

education in bankruptcy,

(ii) taken at least four hours of continuing legal education in ethics or professional responsibility, and

(b) attaches to the declaration, for filing in the case in which he or she desires to appear

(i) a copy of the January 25, 2006 opinion, and

(ii) a copy of the brochure or other proof of the scope of the continuing legal education program attended;

(4) a prohibition on Chapman and Harris Merritt Chapman, Ltd. from listing bankruptcy as an area of specialty or even as an area of practice on its website or in other promotional material unless and until at least one partner of the firm meets the continuing legal education requirements of the preceding sanction; and

(5) disgorgement of the $2,384.87 Chapman and Harris Merritt Chapman, Ltd. were paid by Rogers on behalf of Aston-Nevada to either the court registry or a pro bono legal services organization.

The prohibition from appearing or filing anything in the Bankruptcy Court for the District of Nevada without adhering to the continuing legal education and disclosure requirements continued for five years from the date of the opinion, January 25, 2006, and would renew automatically for another five years unless Chapman or Harris Merritt Chapman, Ltd. were to file a request to be relieved of the restriction, demonstrating to the court why the restriction should be lifted.

In its January 25 opinion, the bankruptcy court persisted in most of the views it expressed in its March 21 opinion and disregarded almost all of what Appellants proffered at the June 17 hearing. For example, the bankruptcy court restated that

Chapman and Harris Merritt Chapman, Ltd. had advocated the propriety of Rogers'

filing by opposing Silver State Bank's motion for sanctions. However, Chapman

repeatedly made it clear that in opposing the sanctions, he was not condoning the

filing, but merely arguing that while Rogers' filing the petition was improper, it was

not malicious and should not be sanctioned. The January 25 opinion also focused on

the fact that Rogers and Chapman both professed to be interested in obtaining the aid

of a neutral bankruptcy trustee, but neither ever employed one. Chapman explained

that he did not employ a trustee because he thought the better course would be to get

the case dismissed or settled. Overall, the court rejected any and all inferences that

Chapman's actions were "taken in good faith by an inept and inexperienced litigator,

out of his element in bankruptcy court."

Appeal to the District Court and this Court

Chapman and Harris Merritt Chapman, Ltd. appealed the bankruptcy court's

January 25, 2006 opinion and corresponding order to the District Court for the District

of Nevada on February 3, 2006. The district court affirmed the bankruptcy court's

opinion and order on February 28, 2008. This timely appeal followed.

**STANDARD OF REVIEW**

This court reviews "de novo a district court's judgment on appeal from a

bankruptcy court," applying "the same standard of review applied by the district

court, reviewing the bankruptcy court's legal conclusions de novo and its factual determinations for clear error." Neilson v. United States (In re Olshan), 356 F.3d 1078, 1083 (9th Cir. 2003) (citations omitted). Also, "[j]urisdictional issues in bankruptcy are reviewed de novo." Mantz v. Cal. State Bd. of Equalization (In re Mantz), 343 F.3d 1207, 1211 (9th Cir. 2003). However, a bankruptcy court's award of sanctions is reviewed only for an abuse of discretion. Hale v. United States Tr., 509 F.3d 1139, 1146 (9th Cir. 2007). Further, a court's award of sanctions pursuant to its inherent power is also reviewed for an abuse of discretion. Doi v. Halekulani Corp., 276 F.3d 1131, 1140 (9th Cir. 2002). A court abuses its discretion in imposing sanctions "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC, 339 F.3d 1146, 1150 (9th Cir. 2003) (citation and internal quotation marks omitted).

## DISCUSSION

### I.     Jurisdiction of the bankruptcy court to impose sanctions

As an initial matter, the bankruptcy court had jurisdiction to impose sanctions upon counsel sua sponte after the formal dismissal of the bankruptcy case even though it only expressly reserved jurisdiction over Silver State Bank's motion for sanctions against Rogers, LeVillier, and Aston-Nevada and did not mention Chapman or Harris

11

Merritt Chapman, Ltd. in its reservation. See Cooter & Gell v. Hartmarx Corp., 496

U.S. 384, 395 (1990).[1] Further, to the extent sanctions were proper in this case, the

bankruptcy court could hold Harris Merritt Chapman, Ltd. and Chapman's partners

and associates who were not directly involved in representing Aston-Nevada in its

Chapter 11 bankruptcy case responsible. Rule 9011(c)(1)(A) of the Federal Rules of

Bankruptcy Procedure provides, "[a]bsent exceptional circumstances, a law firm shall

be held jointly responsible for violations committed by its partners, associates, and

employees." FED. R. BANKR. P. 9011(c)(1)(A); See Miller v. Cardinale (In re

DeVille), 361 F.3d 539, 548–49 (9th Cir. 2004) .

## II.     The sanctions imposed by the bankruptcy court

### A.  Non-monetary sanctions and the court's bad faith finding

As the bankruptcy court and district court orders properly set out, Rule 9011

gives bankruptcy courts the authority to sanction parties, attorneys, and law firms who

present (sign, file, submit, or later advocate) a paper to a bankruptcy court that is

either frivolous or presented for an improper purpose. See FED. R. BANKR. P. 9011(b),

(c); Dressler v. Seeley Co. (In re Silberkraus), 336 F.3d 864, 870 (9th Cir. 2003). "In

---

[1] Although Cooter & Gell was decided in the context of Rule 11 of the Federal Rules of
Civil Procedure, because the language of Rule 9011 of the Federal Rules of Bankruptcy
Procedure "parallels that of Fed. R. Civ. P. 11, . . . courts analyzing sanctions under Rule 9011
commonly rely on cases interpreting Rule 11." Miller v. Cardinale (In re DeVille), 361 F.3d
539, 551 n.5 (9th Cir. 2004).

determining whether sanctions are warranted under Rule 9011(b), [this court] . . . must consider both frivolousness <u>and</u> improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." <u>Dressler</u>, 336 F.3d at 870 (internal quotation marks and citations omitted) (emphasis in original). For sanctions' purposes under Rule 9011, "attorney conduct is measured objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." <u>Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)</u>, 922 F.2d 1438, 1441 (9th Cir. 1991) (citation omitted). "A claim is frivolous if it is both baseless and made without a reasonable and competent inquiry." <u>Id.</u> at 1442 (internal quotation marks and citation omitted). And, "[a]lthough the term 'improper purpose' can be construed to require an improper subjective intent, this court analyzes an allegedly improper purpose under an objective standard." <u>Id.</u> at 1443.

In this case, some of Appellants' actions, viewed objectively, were negligent. As the bankruptcy court found, Chapman should have reviewed the bankruptcy petition and inquired into the estate's assets before agreeing to represent Aston-Nevada in bankruptcy court. Chapman should have accessed PACER, which he admitted to having in his office, to view the petition and other papers if he could not get them from Rogers. He should have become familiar with the underlying state

court case, realized that Aston-Nevada only had one asset and one creditor, and moved to dismiss the Chapter 11 case without opposing Silver State Bank's motion for relief from the stay. He should have ascertained in meeting with Rogers for over an hour that Rogers had filed for bankruptcy for the improper purpose of forestalling the underlying state court case. Chapman was undoubtedly sloppy in his handling of this case.

However, the bankruptcy court did not stop by finding that Appellants acted negligently. The bankruptcy court also found that they acted in bad faith and imposed sanctions based on this finding. Such a finding is not supported by the record. Consequently, the bankruptcy court abused its discretion in imposing such egregiously harsh sanctions in this case. See Retail Flooring Dealers of Am., Inc., 339 F.3d at 1150.

The bankruptcy court based its bad faith finding on several clearly erroneous factual findings and unsubstantiated interpretations of Chapman's actions. For example, the bankruptcy court erroneously found that Chapman actually knew that the estate had only one asset and one creditor prior to his filing of the opposition to Silver State Bank's motion for relief from the stay notwithstanding the fact that the only evidence before the bankruptcy court proved that he did not learn those facts until later.

The bankruptcy court also erroneously equated Chapman's filing of the motion to dismiss and mounting a defense against Silver State Bank's motion for sanctions as later advocating the propriety of Rogers' initial filing. The court construed Chapman's use of the plural "assets" and "creditors" in his initial response to Silver State Bank's motion for relief from the stay, and his own subsequent filings, as advocating the propriety of Rogers' initial filing. This conclusion is not supported by the evidence. Rather, the evidence shows that, in the opposition to Silver State Bank's motion for relief from the stay, Chapman genuinely needed to research the extent of the estate and that he assumed that there were multiple assets and creditors.

In defending Rogers and Aston-Nevada with respect to Silver State Bank's sanctions motion, the evidence supports a finding that Chapman attempted to argue that Rogers' conduct, while improper, was not sanctionable because Rogers subjectively believed that he was doing the right thing to protect himself from what he saw as a conspiracy against him. Again, Chapman may have been negligent under the circumstances, but the facts do not support a finding of bad faith.

The bankruptcy court similarly skewed other facts against Appellants, including their failure to engage a bankruptcy trustee as the debtor originally suggested in his petition. The evidence shows that Appellants immediately sought to dismiss the case after the hearing on the motion for relief from stay rather than waste time and money

15

engaging a trustee. The bankruptcy court even characterized Chapman's motion to dismiss filed on August 25, 2004, the day after the hearing on Silver State Bank's motion for relief from the stay, as an example of his bad faith. Again, the record does not support such a finding. Instead, the evidence shows that Appellants' motion was a hasty effort to get the case out of bankruptcy court and back to state court where it belonged. In all, considering the facts as they were presented to the bankruptcy court, the evidence does not support a finding of bad faith on the part of Appellants. It strains reason to find that an attorney who agrees to represent a client, learns within a few days that the client's position lacks merit, and seeks to dismiss the action the next day, acts in bad faith. It is equally untenable that an attorney who argues that his client should not be sanctioned is necessarily condoning the action of his client. There is a difference between ratifying a client's conduct and simply arguing that, while improper, the conduct in question was not sufficiently improper to warrant sanctions. On the facts as presented, it may be perfectly fair to conclude that Rogers, Aston-Nevada, and LeVillier acted in bad faith and with improper purpose when they filed the Chapter 11 case, seemingly to stave off the underlying state court action, and continued to play fast and loose with the court and their attorneys. But, it is entirely different to impute that bad faith and improper purpose to a careless attorney and his entire firm. Consequently, we must conclude that the bankruptcy court abused its

16

discretion in imposing the sanctions that it did in this case because "it based its ruling on . . . a clearly erroneous assessment of the evidence." See <u>Retail Flooring Dealers of Am., Inc.</u>, 339 F.3d at 1150.[2]

### B. Sanctions rose to the punitive level

We also conclude that the bankruptcy court abused its discretion in imposing sanctions that rose to the punitive level. See <u>Retail Flooring Dealers of Am., Inc.</u>, 339 F.3d at 1150. While we recognize that bankruptcy courts have broad discretion in ordering sanctions pursuant to Rule 9011, and have ordered a wide array of sanctions, including fines, attorneys' fees and costs, disgorgement of fees charged for the sanctionable conduct, mandatory legal education, and referrals to disciplinary bodies, see Georgene M. Vairo, <u>Rule 11 Sanctions: Case Law, Perspectives and Preventative Measures</u> 566–74 (Richard G. Johnson, ed., 3d ed. 2003), Rule 9011 states that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," FED.

---

[2] The bankruptcy court and Appellants agree that monetary sanctions were not available to the court for any alleged Rule 9011 violation, as they would run afoul of Rule 9011(c)(2)(B). See FED. R. BANKR. P. 9011(c)(2)(B). Further, because the bankruptcy court erroneously found bad faith on the part of Appellants in this case, it also erred in invoking its inherent power to impose monetary sanctions. See <u>Fink v. Gomez</u>, 239 F.3d 989, 993 (9th Cir. 2001) (stating "bad faith is required for sanctions under the court's inherent power sanctions"). However, during argument in open court, Appellants' counsel stated that monetary sanctions are not at issue in this case. Counsel stated that the $9,640.00 fine imposed by the bankruptcy court had already been paid to the Boy Scouts of America and that Appellants are not seeking to recover it. Thus, we address only the non-monetary sanctions ordered by the bankruptcy court.

17

R. BANKR. P. 9011(c)(2). By extension, sanctions ordered pursuant to Rule 9011 and the court's inherent power should not rise to the level of a penalty. See Miller v. Cardinale (In re Deville), 280 B.R. 483, 497–98 (B.A.P. 9th Cir. 2002). We cannot undo the effect of completed actions or waived issues, but will vacate the order of the bankruptcy court in its entirety.

Many of the sanctions have already been fully carried out by Appellants. As such, Appellants conceded in open court during oral argument that the only sanctions from which they seek us to relieve them are: (1) the public reprimand in the form of the publication of the court's opinion; and (2) the requirement that Appellants file proof of completion of ethics and bankruptcy continuing legal education,[3] along with a copy of the January 25, 2006 bankruptcy court order, before appearing or filing any document in the Bankruptcy Court for the District of Nevada during the next five years, which could be automatically renewed for an additional five years. Appellants' arguments are well taken. Due, perhaps, in part, to the intemperate brief, written in anger, in response to the bankruptcy court's March 21, 2005 order to show cause, the bankruptcy court abused its discretion and came down with these equally intemperate,

_____

[3] Appellants also stated in open court during oral argument that they will certainly complete eight hours of continuing legal education in bankruptcy and four hours in ethics or professional responsibility to meet their own and the state's professional standards. We encourage such a practice; however, they need not submit proof of compliance with future bankruptcy filings.

18

punitive sanctions in its egregious final order.

For the foregoing reasons, we REVERSE the district court's judgment and VACATE the January 25, 2006 order of the bankruptcy court.