In re BLUE PINE GROUP, INC., Debtor.

David J. Winterton; David J. Winterton & Associates, Ltd., Appellants,

v.

Humitech of Northern California, LLC; John Pink; Blue Pine Group, Inc.; United States Trustee, Appellees.

BAP No. NV–10–1412–HJoJu.

Bankruptcy No. 09–13274.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 20, 2011.

Decided Aug. 22, 2011.

Ordered Published Aug. 31, 2011.

David J. Winterton of Winterton & Associates, Ltd., Las Vegas, NV, appeared and argued for Appellants.

W. George Wailes of Carr, McClellan, Ingersoll, Thompson & Horn PLC, Burlingame, CA, on brief for Appellee, Humitech of Northern California.

Before: HOLLOWELL, JOHNSON [1], and JURY, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

David J. Winterton and his law firm, David J. Winterton & Associates, Ltd. (collectively, Winterton) appeal the bankruptcy court's imposition of $109,528 in sanctions against him for violating Rule 9011 by filing a corporate bankruptcy without proper authorization, failing to conduct a reasonable inquiry into his client's corporate affairs, and, after being put on notice that he lacked proper authorization, continuing to advocate the improper filing. We AFFIRM.

**1.** The Hon. Stephen L. Johnson, Bankruptcy Judge for the Northern District of California, sitting by designation.

**2.** Pink has stated that Humitech is Sweeney and Pink, they are "one and the same."

## I. FACTS

### A. *Blue Pine Group, Inc.'s Corporate Formation*

Blue Pine Group, Inc. (Blue Pine) was formed to operate Gaskets–N'–More, a business that installed and repaired gaskets in commercial refrigeration units. Blue Pine was conceived as a joint venture between John Pink (Pink), who owns Humitech of Northern California, LLC (Humitech), a California company that installs and repairs commercial refrigeration gaskets, and John Grose (Grose), who owns and operates a similar business in Nevada, M & G Group Enterprises, Inc. (M & G). To that end, Pink and Grose incorporated Blue Pine in Nevada in March 2008.

Blue Pine's articles of incorporation list Pink, his partner at Humitech, Adam Sweeney (Sweeney), Grose and his wife, Brenda Grose (together, the Groses), as directors. Pink claims that Humitech and Grose were the initial shareholders of Blue Pine, with Humitech holding at least 50% of the stock. However, Grose has stated that the four directors of Blue Pine were each 25% shareholders.[2] The record does not establish definitively whether shares of stock were actually issued, and likely they were not. However, it is clear from the record that the parties considered themselves Blue Pine's directors and shareholders. Additionally, while Blue Pine had draft bylaws, they were never signed or implemented.[3]

Gaskets–N'–More operated for only a short time before disputes arose between Pink and Grose. On February 6, 2009,

**3.** The record does not contain any draft bylaws.

Humitech and Pink[4] filed a complaint in California state court against the Groses, M & G and Blue Pine alleging various causes of action including conversion and fraud (the California Litigation). Humitech alleged that Grose and M & G engaged in unfair business practices by converting assets of Blue Pine—using business plans, logos, customers, employees and concepts—to operate a competing business to the detriment of Gaskets–N'–More and Humitech.

## B. *The Blue Pine Bankruptcy*

Through a referral from Hannah Irsfeld (Irsfeld), a litigation attorney representing the Groses and M & G in connection with the California Litigation, Grose consulted Winterton about filing bankruptcy on behalf of Blue Pine. On March 10, 2009, Winterton filed bankruptcy schedules (Schedules) and a statement of financial affairs (SOFA) for Blue Pine. However, the actual bankruptcy petition was not electronically filed with the Schedules and SOFA. Nevertheless, a chapter 7[5] bankruptcy case was commenced by the clerk's office.

According to the Schedules, Blue Pine had $451,500 in assets and $178,436.47 in liabilities. The Schedules indicated that Blue Pine had no cash, checking or saving account, no stock, equipment, vehicles, or tools. There were only two creditors, Pink and M & G. In the SOFA, Blue Pine indicated there were no directors or stock-holders that owned, controlled, or held more than 5% of the voting or equity securities of the corporation and that no directors had been terminated within one year of the bankruptcy filing. Additionally, Blue Pine indicated it was not involved in any lawsuits. Grose, in his capacity as president of Blue Pine, declared under penalty of perjury that the SOFA contained true and correct information.

Along with the Schedules, Winterton signed and filed a Disclosure of Compensation indicating he had agreed to analyze Blue Pine's financial situation and render advice on whether to file a bankruptcy petition.

The actual chapter 7 bankruptcy petition was finally filed on March 17, 2009. Winterton explained the lapse as a clerical error on the part of his staff, who had not correctly uploaded the documents into the electronic docket filing system. The petition was signed by Winterton as counsel for Blue Pine with a date of March 10, 2009. Winterton's signature certified that after conducting an inquiry, he had no knowledge that the information contained on the Schedules and SOFA was incorrect. Grose also signed the petition declaring that he had been authorized to file the petition on behalf of Blue Pine.[6] However, there was no corporate resolution attached either to the Schedules, SOFA, or petition that demonstrated Blue Pine had authorized the bankruptcy filing. Such a corporate resolution is required by Local Bankruptcy Rule 1002(b).[7]

---

4. Humitech and Pink are represented by the same attorney, filed motions jointly in this case, and are aligned in their arguments to the bankruptcy court. Therefore, Humitech and Pink will collectively be referred to as Humitech.

5. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

6. The authority to file a bankruptcy is a matter of state law. *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945). Nevada corporate law controls in this case. *See* Nevada Revised Statutes (NRS) 78.010–78.795.

7. Local Bankruptcy Rule 1002(b) provides that "[w]hen a voluntary petition is filed by a corporation, there must be attached to it a true copy of the resolution of the corpora-

On March 11, 2009, Irsfeld notified Humitech by letter of Blue Pine's bankruptcy and contended that the bankruptcy case stayed the California Litigation not only as to Blue Pine but also as to the Groses and M & G.

## C. *Humitech's Response To The Bankruptcy Filing*

On March 13, 2009, Humitech's attorney, W. George Wailes (Wailes), sent a letter to Winterton along with a copy of Blue Pine's articles of incorporation (March 13 Letter). Wailes informed Winterton that Humitech owned 50% of Blue Pine and was an equal shareholder with Grose. Wailes asserted that Blue Pine had four directors and there had been no meeting of the directors or resolution authorizing the bankruptcy filing. Wailes alerted Winterton that the bankruptcy petition had not yet been filed with the Schedules and urged Winterton to promptly dismiss the case.

On March 16, 2009, Blue Pine filed amended Schedules and a SOFA[8] that again indicated there had been no removal of any directors of Blue Pine prior to its bankruptcy filing. Winterton uploaded the chapter 7 bankruptcy petition the following day.

Without receiving a response from Winterton to its March 13 Letter, Humitech drafted and served on Blue Pine and Winterton a motion for Rule 9011 sanctions on March 18, 2009 (Proposed Sanctions Motion). Humitech insisted that there had not been a meeting of Blue Pine's shareholders or directors to discuss bankruptcy and that neither Pink nor Sweeney agreed to authorize the filing. Therefore, Humitech alleged that Grose improperly filed

tion's board of directors authorizing the filing."

Blue Pine's bankruptcy to hinder or delay the California Litigation.

On April 7, 2009, Winterton sent a letter to Wailes in response to the March 13 Letter and Proposed Motion for Sanctions. Winterton stated:

I have spoken to the Directors and counsel for the Debtor. They have their own corporate counsel. They have informed me that the Bylaws for the corporation were prepared, but were never signed. If there are no signed and approved Bylaws, then you have to follow Nevada Statutes. Corporate Counsel informed me that they followed the Nevada Statutes and it was properly approved. As a result, the bankruptcy is proper. You have not provided me with complete documentation to support your position. . . . There are corporate documents showing me the documents supporting their position. I am sorry, but I cannot dismiss the case without further evidence of your position.

Winterton did not provide Wailes any documentation establishing that there had been a corporate resolution authorizing Blue Pine's bankruptcy filing. Wailes did not respond to Winterton's letter.

Then, on April 9, 2009, Winterton and Irsfeld filed, on behalf of Blue Pine, the Groses, and M & G, an adversary proceeding against Humitech alleging, among other things, breach of contract, unjust enrichment, conversion and fraud. Blue Pine, the Groses, and M & G claimed that Pink had diverted funds from Blue Pine for his own business use and profit. The complaint described Pink as a director, officer, and shareholder of Blue Pine and did not assert or allege that he had ever been removed as a director.

8. The amended Schedules were dated March 16, 2009, but appear to be identical to the Schedules filed on March 10.

On April 15, 2009, a § 341 Meeting of Creditors was held. Grose appeared with Winterton[9] to testify on behalf of Blue Pine. Grose testified that there were four directors of Blue Pine, each a 25% shareholder of the corporation. He testified that the last meeting of the board of directors was in August 2008; however, Grose later explained that the Groses held a meeting in January 2009, at which they authorized the filing of Blue Pine's bankruptcy.[10] Although Grose testified that Blue Pine's corporate attorney took care of any notices, he also stated that directors' meetings had been informal and that as far as the January 2009 meeting was concerned, it would have been a "waste of time" to try to notify Pink and he had no idea how to contact Sweeney. Grose did not mention that any director had been removed from office.

### 1. *Motion to Dismiss*

On April 24, 2009, Humitech filed a motion to dismiss Blue Pine's bankruptcy case based on Winterton's refusal to withdraw the alleged unauthorized petition (the Motion to Dismiss).[11] Humitech argued that under Nevada corporate law, a majority of the members of a corporation's board of directors was required to approve a resolution to dissolve a corporation and, by analogy, the same requirement was necessary to approve a resolution to file bankruptcy. Based on Grose's testimony at the § 341 meeting, it was undisputed that Blue Pine did not have the approval of at least three of the four directors since neither Pink nor Sweeney attended any board of directors meeting that resolved to file the bankruptcy case. Consequently, Hum-

itech argued the resolution was invalid and the case had to be dismissed. Additionally, Humitech argued that Blue Pine filed the case solely to hinder or forum shop the California Litigation.

Winterton filed an opposition to the Motion to Dismiss on behalf of Blue Pine (Opposition to Dismissal). In the Opposition to Dismissal, Blue Pine contended that Sweeney and Pink had been removed as directors and the remaining directors, the Groses, properly approved a resolution authorizing Blue Pine's bankruptcy. In support of the Opposition to Dismissal, Grose filed a declaration reiterating that he had never met Sweeney, did not know how to get in touch with him, and that because Sweeney was never involved in Blue Pine, Sweeney was removed as a director.

In furtherance of the Opposition to Dismissal, Blue Pine submitted minutes from a February 4, 2009, meeting of the board of directors. The minutes indicated that only the Groses were present at the meeting, "constituting a quorum." The meeting minutes stated, in relevant part:

1. John R. Pink, has failed as a member of the Blue Pine Group Inc. to follow the direction of the corporate bylaws, he has also ignored the direction of the other directors with the miss use [sic] of the funds of our business venture "Gaskets–N–More". He has made choices to take on debts without consulting the directors, and has acted out of text as a director of the corporation with malice to the corporation's direction.

RESOLVED

---

9. Winterton himself did not attend; however, an associate from his law firm did.

10. There is no evidence of a January 2009 board of directors' meeting.

11. Humitech sought dismissal "for cause" under § 707(a). *See Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1191 (9th Cir.2000) (grounds for dismissal listed in statute are illustrative and not exhaustive).

The vote is in favor to remove John R. Pink as a director/member of Blue Pine Inc.

John Grose yes

Brenda Grose yes

2. Adam Sweeney has not been an active member and has not provided any financial support to the Blue Pine Corporation, both John Grose or Brenda Grose has never had any correspondence of any kind with Mr. Sweeney and they have never met him in person.

RESOLVED

The vote is in favor to remove Adam Sweeney as a director/member of Blue Pine Inc.

John Grose yes

Brenda Grose yes

Additionally, Blue Pine submitted minutes of a March 2, 2009, meeting of the board of directors, which again included participation only by the Groses, stating:

Due to the actions of the past board member John Pink, the following issue have caused [sic] the Corporation to start closing its operation down in the areas it is doing business in California. Blue Pine Group sole intention was to do business in the Northern California area known as San Joaquin Valley.... John Pink has also mismanaged the funds of the Corporations / DBA: Gaskets–N–More. John Pink was the Treasure [sic] of the Corporation and did not follow the guide lines set forth by the Corporation and has caused major damage to the corporation with his misconduct. The Corporation feels that the only way it will be able to protect the remaining board members is to place it into bankruptcy. Motion accepted and agreed to place Blue Pine into Bankruptcy.

Winterton explained in a declaration attached to the Opposition to Dismissal that he had addressed whether Blue Pine had authority to file bankruptcy with Grose and Irsfeld at the time he prepared the Schedules, SOFA and petition, and they both assured him that the requisite corporate authority existed. Winterton declared that he continued his investigations after receiving the March 13 Letter and Proposed Sanctions Motion by consulting with Irsfeld. He then received the minutes from the two board of directors meetings and believed they confirmed Irsfeld's representation that there was corporate authorization for the bankruptcy filing.[12]

In its reply, Humitech pointed out that according to Nevada law, any removal of a director requires that proper notice of a meeting of the board of directors be served on all shareholders and that 2/3 of shareholders must vote to agree to remove a director. Again, Humitech alleged that since Grose admitted that there were four shareholders and that he had never contacted Sweeney, the resolutions to remove Sweeney and Pink were invalid. Additionally, Humitech noted that Nevada law requires a majority of directors to constitute

---

12. In his declaration, Winterton does not say *when* he received from Irsfeld the minutes from the board of directors' meeting, which he believed constituted the corporate resolution. However, he has argued and testified (numerous times) that he received them on March 20, 2009. He has also testified (a few times) that he received the documents on March 16, 2009.

Winterton steadfastly contends on appeal that he had the corporate resolution prior to filing the bankruptcy petition and any finding that he did not have it was clearly erroneous. Appellants' Opening Br. at 11. However, the bankruptcy court found ·that Blue Pine's bankruptcy was filed without proper corporate authorization when it ruled on the Motion to Dismiss and that finding was not appealed. Furthermore, the petition was dated March 10, 2009, and Winterton confessed that it was purely a clerical error that caused it to be uploaded later on March 17, 2009.

a quorum in order to transact business. Without Pink or Sweeney's attendance at the March 4, 2009 meeting, Humitech contended that the resolution to file bankruptcy for Blue Pine was also invalid.

The bankruptcy court held a hearing on the Motion to Dismiss on June 10, 2009 (the Dismissal Hearing).[13] At the close of the Dismissal Hearing, the bankruptcy court recited its findings of fact and conclusions of law. It determined that under Nevada law, the directors of a corporation must participate in transactions outside the ordinary course of business and that removal of a director requires 2/3 of the shareholders' votes. The bankruptcy court found, based on the undisputed facts in the record, that: (1) there were four directors and shareholders of Blue Pine; and, (2) neither Pink nor Sweeney were notified of (and they were not present for) the February 4, 2009 board of directors' meeting where Pink and Sweeney were removed as directors, or the March 2, 2009 meeting where the bankruptcy case was authorized. The bankruptcy court noted that Blue Pine's SOFA and amended SOFA indicated there had been no removal of directors in the year prior to the bankruptcy filing.

Therefore, the bankruptcy court concluded that the February 4 and March 2, 2009 board of directors' meetings were invalid and there was no corporate authorization to file the bankruptcy case. The bankruptcy court dismissed the case but reserved jurisdiction to rule on any request for sanctions brought by Humitech as a result of the improper bankruptcy filing.

A final order dismissing Blue Pine's bankruptcy case was entered on June 29, 2009 (Dismissal Order). Blue Pine did not appeal the Dismissal Order.[14] The bankruptcy court subsequently approved a stipulation to dismiss the adversary proceeding.[15] Blue Pine's bankruptcy case was closed on July 9, 2009.

### 2. *Motion For Sanctions*

On September 16, 2009, Humitech filed a motion to reopen Blue Pine's bankruptcy case and for an award of sanctions under Rule 9011 (Sanctions Motion). Humitech asserted that Rule 9011 sanctions were in order because Winterton knew that Blue Pine was not authorized to file bankruptcy but nevertheless proceeded with the case. Humitech attached billing records and timesheets and requested compensation for the fees and costs associated with responding to the improperly filed bankruptcy case, including responding to a motion

---

13. A hearing on the Motion to Dismiss was initially held on May 26, 2009. At that hearing, the bankruptcy court pointed out that there were issues of fact about bylaws, shareholders, and meeting notices and set an evidentiary hearing. Prior to the scheduled June 10, 2009 hearing, the bankruptcy court contacted the parties and changed the hearing to one that reconsidered the necessity of an evidentiary hearing. Ultimately, the Motion to Dismiss was taken up and resolved on a summary judgment standard without the need for an evidentiary hearing.

14. In considering sanctions against Winterton, the bankruptcy court later asked him why, if he continued to still believe that he possessed the requisite corporate authorization to file Blue Pine's bankruptcy, he did not appeal the Dismissal Order. Winterton responded: "Because without [Blue Pine's corporate counsel's] testimony and strength ... I just didn't have the evidence to present to the court." Hr'g Tr. (Jan. 25, 2010) at 109:13–18; Hr'g Tr. (Feb. 4, 2010) at 166.

15. The stipulation was signed by Winterton as "Attorneys for Plaintiffs Blue Pine Group, Inc., M & G Group Enterprises, Inc., John Grose and Brenda Grose." Irsfeld, who was the attorney for the Groses and M & G, however, did not sign the stipulation on behalf of the Groses.

filed by Irsfeld in the California Litigation that sought to enforce the automatic stay against the Groses and M & G.

Winterton opposed the Sanctions Motion (Opposition to Sanctions). In justifying his conduct in the case, Winterton explained that he had appropriately relied on the assurances from Grose and Irsfeld that there was a corporate resolution and also that Blue Pine had only two directors, the Groses, who could authorize acts on behalf of Blue Pine. Winterton contended this information was confirmed on March 20, 2009, when he received copies of the February 4 and March 2, 2009 minutes of the board of directors' meetings. Furthermore, Winterton argued the bankruptcy case was not filed for an improper purpose but because Blue Pine's assets were being diverted by Pink.

Thereafter, a discovery dispute ensued between the parties, which was ultimately resolved by the bankruptcy court in early January 2010. The hearing on the Sanctions Motion was scheduled for January 25, 2010 (the Sanctions Hearing).

In the meantime, the Groses, M & G, Humitech, and Pink settled the California Litigation. A Stipulation for Settlement was entered on January 14, 2010 (the Stipulation). The Stipulation stated, in relevant parts:

1. This case ... is deemed settled....

5. Counsel for each of the parties to this agreement represents that he/she has fully explained to his/her client the legal effect of this agreement and of the Release and Dismissal with

Prejudice provided for herein ... each attorney represents that his/her client(s) has freely consented to and authorized this agreement.

. . .

7. [E]ach party will bear its own attorneys' fees and court costs.

Addendum:

1. [E]ach party, for himself and his respective legal successors and assigns release and forever discharges the other Parties and their respective shareholders, directors, officers, employees, agents, attorneys ... from any and all claims, demands, damages, debts, liabilities, ... expenses, liens, actions, and causes of action of every kind and nature ...

The Stipulation was signed by Wailes as attorney for Humitech and Pink, Pink for himself and Humitech, and Richard Kutche [16], as attorney for the Groses and M & G, along with the Groses individually, and Grose for M & G. Blue Pine had a signature line under Kutche's representation, but none of its directors signed on behalf of Blue Pine.[17]

In Winterton's trial brief filed just prior to the Sanctions Hearing, he asserted that because he had represented Blue Pine and the Groses, individually, with respect to the stipulation to dismiss the adversary proceeding, that he was released by the Stipulation from liability under Rule 9011 in the bankruptcy case. Alternatively, Winterton maintained that Blue Pine's bankruptcy case was authorized, legitimate [18], and justified.

---

16. Richard Kutche is a California attorney not associated with Winterton's practice.

17. Blue Pine never answered the complaint or appeared in the California Litigation after the bankruptcy case was dismissed.

18. Winterton asserted the bankruptcy was legitimate because Blue Pine had "negative equity ... was insolvent ... had accounts receivable of over $100,000 ... vehicles and furniture and equipment. There were accounts payables, credit cards, and loans. There was also outstanding taxes due to the

Winterton generally opposed the reasonableness of Humitech's fees as duplicative and unclear as to the fees relating to work in the California Litigation, but provided no specific assertions or amounts he felt should be excluded.

The Sanctions Hearing comprised a full day of testimony on January 25, 2010, and a half-day on February 4, 2010. On October 7, 2010, the bankruptcy court issued its written Memorandum Imposing Sanctions (Memorandum Decision). The bankruptcy court found, as it did in the Dismissal Order, that the bankruptcy petition was filed without corporate authorization. It further found that faced with the information from Wailes and the Proposed Sanctions Motion, Winterton lacked a reasonably sufficient basis for his later filings and appearances in the case, and therefore proceeded to take positions in the case that "later advocated" the impropriety of the initial filing. Consequently, the bankruptcy court decided that monetary sanctions were appropriate.

The bankruptcy court reviewed the evidence from Humitech demonstrating it had incurred over $100,000 in attorneys' fees and expenses related to dismissing the bankruptcy case and pursuing the Sanctions Motion. It ruled that, had Winterton conducted a reasonable inquiry into the corporate affairs of his client, none of those expenses would have been necessary. After considering Winterton's conduct, and any aggravating or mitigating factors, the bankruptcy court determined that a compensatory award of $109,528 in sanctions was appropriate. Winterton timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334(b) and

§ 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion in finding that Winterton violated Rule 9011 and in imposing monetary sanctions against him?

2. Did the bankruptcy court abuse its discretion in determining that $109,528 was an appropriate sanction.

## IV. STANDARDS OF REVIEW

■ We review all aspects of an award of sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 411 (9th Cir. BAP 2005), *aff'd* 564 F.3d 1052 (9th Cir.2009); *In re Nguyen*, 447 B.R. 268, 276 (9th Cir. BAP 2011) (en banc).

■ In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. *Id.*

State of California." This assertion contradicts the Schedules.

## V. DISCUSSION

### A. *Violation of Rule 9011 And Imposition of Monetary Sanctions*

 Pursuant to Rule 9011, bankruptcy courts have the authority to sanction parties, attorneys, and law firms who present (sign, file, submit, or later advocate) a petition, pleading, or paper to a bankruptcy court that is either frivolous or presented for a an improper purpose.[19] In determining if sanctions are warranted under Rule 9011, the bankruptcy court must consider both frivolousness and improper purpose "on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Dressler v. The Seeley Co. (In re Silberkraus)*, 336 F.3d 864, 870 (9th Cir.2003) (quoting *In re Marsch*, 36 F.3d at 830).

 The word "frivolous," when used in connection with sanctions denotes a filing that is both baseless—lacks factual foundation—and made without reasonable competent inquiry. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990). An attorney has a duty to conduct a reasonable factual investigation as well as to perform adequate legal research that confirms that his position is warranted by existing law (or by a good faith argument for a modification or extension of existing law). *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir.2002). Thus, a finding that there was no reasonable inquiry into either the facts or the law is tantamount to a finding of frivolousness. *Townsend*, 929 F.2d at 1362.

 The Ninth Circuit has held that the standard to determine the reasonableness of an attorney's inquiry as to facts contained in signed documents submitted to a court is an objective one. In considering sanctions under Rule 9011, the bankruptcy court must measure the attorney's conduct "objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir.1991); *G.C. & K.B. Inv., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir.2003). Additionally, an improper purpose is analyzed under an objective standard. *In re Grantham Bros.*, at 1443.

**19.** Rule 9011 provides, in relevant part:
 (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 . . .
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
 (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
 The language of Rule 9011 parallels that of Fed.R.Civ.P. 11. Therefore, courts analyzing sanctions under Rule 9011 may appropriately rely on cases interpreting Fed.R.Civ.P. 11. *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir.1994).

In applying these standards to this case, the bankruptcy court found that while Winterton should have complied with Local Bankruptcy Rule 1002(b) and obtained the corporate resolution authorizing Grose to file bankruptcy on behalf of Blue Pine prior to filing the case, it may not have been unreasonable for him to have initially relied on Grose's and Irsfeld's assurances and representations that a corporate resolution existed. However, the bankruptcy court found that Winterton's actions soon thereafter, when he was alerted to inconsistencies in those representations, were not reasonable.

Winterton asserts that the bankruptcy court's finding was erroneous; he contends that he acted reasonably throughout the bankruptcy case. After carefully reviewing the evidence in the record, we agree with the bankruptcy court that Winterton's conduct did not meet the standards set by Rule 9011.

Winterton stated that after receiving the March 13 Letter and Proposed Sanctions Motion, he further investigated the issue of whether a corporate resolution existed, but admitted such investigation consisted only of consulting with Irsfeld. Although he had information from Wailes that conflicted with Irsfeld's information, he proceeded with the case without reviewing for himself the corporate documents or researching the relevant corporate law. Winterton acknowledged that Blue Pine's records were in disarray and it was unclear if there were enforceable bylaws or if stock had ever been issued, but Winterton did not receive or review those documents until he responded to the Motion to Dismiss.

Thus, although he received copies of the February 4 and March 2, 2009 minutes from the meetings of the board of directors, Winterton testified that he did not immediately review them in connection with Blue Pine's corporate documents or Nevada corporate law. He did not further question Irsfeld or Grose as to whether the meetings were properly noticed and held, or whether the requisite number of directors had approved the resolutions to effectively remove Sweeney and Pink or authorize the bankruptcy. Instead, he relied on Irsfeld's earlier representations that she had understood from Grose that Blue Pine's corporate counsel, Henry Lichtenberger (Lichtenberger), complied with all corporate procedures. He proceeded to file the adversary proceeding, attend the § 341 meeting of creditors, and oppose the Motion to Dismiss.

By Winterton's own admission, he only consulted the Nevada law regarding corporations *after* the Motion to Dismiss was filed and he was preparing his Opposition to Dismissal. He admitted it was at that time that he consulted with Lichtenberger about Blue Pine's corporate governance and whether there were actually any enforceable bylaws. *See e.g.,* Appellants' Opening Br. at 4, 14–15. And only then did Winterton ask for and investigate corporate documents that Grose had regarding Blue Pine. *Id.* at 11. Moreover, Winterton waited until he was preparing for the Dismissal Hearing to request an affidavit and documentation to confirm Lichtenberger's alleged representation that all required procedures leading to Blue Pine's resolution to file bankruptcy were properly followed. *Id.* at 15.

A cursory review of the Nevada statutes regarding corporations would have revealed that a majority of a board of directors is necessary to constitute a quorum for the transaction of any corporate business. NRS 78.315. Also, no less than 2/3 vote of shareholders is required before a director can be removed from office. NRS 78.335. If no stock has been issued, the directors are required to approve the dis-

solution of a corporation. NRS 78.580. While it was not clear that Blue Pine had actually issued stock, and while Blue Pine and Grose contested whether *Humitech* was a shareholder, there was never any dispute that Blue Pine and Grose considered Pink, Sweeney, and the Groses the directors and shareholders of Blue Pine at its inception. The general rules provided in the NRS should have guided Winterton to press for more information and to investigate the validity of whether the corporate resolution was valid.

Consequently, we agree with the bankruptcy court's finding that Winterton failed to undertake an objectively reasonable inquiry into the facts and law supporting the bankruptcy petition, relying instead on information others told him. He proceeded (even though he was facing potential Rule 9011 sanctions) with a frivolous bankruptcy case. As the bankruptcy court noted, if Winterton "had simply examined the evidence in the record, done even the minimal research into Nevada corporate law, and compared this with what his clients told him, he would have understood that he had no authority to file the petition and continue to advocate that it was proper." Memorandum Decision at 13.

 Winterton contends that he was justified in relying on the representations of Irsfeld and Lichtenberger. However, an attorney may not delegate his duty to validate the truth and legal reasonableness of papers filed with the court. *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 965 (9th Cir.1991).

> The signing attorney cannot leave it to [another] to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact

that *he personally applied his own judgment. . . .* [T]he text [of Rule 9011] establishes a duty that cannot be delegated.

*Id.* (emphasis added). Winterton admitted that he pursued the case even though he failed to personally review the facts and law or even to press for declarations or documents to support or verify the information given to him by Irsfeld or Lichtenberger.

Furthermore, the bankruptcy court found that Winterton acted improperly by persisting in advocating the propriety of the filings and positions he knew were frivolous and causing Humitech to incur fees and expenses in dismissing the bankruptcy case and in protecting its rights in the California Litigation.[20] Memorandum Decision at 12. Although Winterton was told by Irsfeld that the bankruptcy had to be filed because Pink was misappropriating Blue Pine's assets and a trustee would allow the dispute between Pink and Grose to be worked out, Winterton failed to explain how alleged misappropriation was a proper basis for filing bankruptcy without corporate authorization. There was no evidence to explain the haste necessary for the filing that would have precluded ensuring that proper corporate authority existed. *See Townsend,* 929 F.2d at 1364 (if attorney has only short time in which to act, a more cursory inquiry may be tolerated).

The bankruptcy court's finding that Winterton's conduct in this case fell short of the standard set by Rule 9011 was not illogical, implausible, or unsupported by the evidence in the record. We therefore conclude that the bankruptcy court did not abuse its discretion in determining that

---

**20.** Winterton himself did not take actions in the California Litigation, but because Winterton did not voluntarily dismiss the bankruptcy

case, Humitech was required to contest the motion to extend the automatic stay to Blue Pine's directors.

Winterton violated Rule 9011(b) and that sanctions were appropriate.

## B. *Determination That $109,528 Was An Appropriate Sanction*

■ In assessing an award of sanctions, we examine whether the proceedings were fair, the evidence supports the award, and whether the award is reasonable. *In re Nguyen*, 447 B.R. at 276.

We have no doubt that these proceedings were fair.

Winterton received the Proposed Sanctions Motion, Motion to Dismiss, and Sanctions Motion, all of which detailed Humitech's specific arguments under Rule 9011 as to why sanctions were appropriate. Winterton was given ample opportunity to respond to each of the motions and participated in the Dismissal Hearing and the Sanctions Hearing. The bankruptcy court conducted a lengthy hearing on the Sanctions Motion where Winterton and others testified about their role in the bankruptcy case. Winterton had a full and fair opportunity to present his positions and to challenge the amount of any sanctions requested.

On appeal, Winterton contends the sanctions award is unreasonable as excessive and punitive.[21] However, the evidence supports that the bankruptcy court imposed reasonable sanctions against Winterton, notwithstanding its large amount.

■ Within the express limitations of Rule 9011(c), the bankruptcy court has considerable discretion in determining the amount of the award. *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 553 (9th Cir.2004). Rule 9011(c) provides that "sanction[s] imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and that such sanctions may include "some or all of the reasonable attorneys' fees and expenses incurred as a direct result of the violation." Rule 9011(c)(2). Under Rule 9011(c)(2), a bankruptcy court may not impose a deterrence penalty that is a "serious penalty" in the nature of criminal contempt. *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 28 (9th Cir. BAP 2003). But by the plain language of Rule 9011(c), a restitutionary award to compensate an opposing party for unnecessary litigation expenses (as opposed to a punitive fine paid to the court) may be an appropriate sanction. *In re Marsch*, 36 F.3d at 831. Moreover, an appropriate deterrence penalty may still be greater than the amount of compensatory damages. *In re DeVille*, 280 B.R. 483, 498 (9th Cir. BAP 2002), *aff'd*, 361 F.3d 539 (9th Cir.2004).

■ Here, the bankruptcy court carefully considered the amount of Humitech's damages resulting from Winterton's conduct. It considered the ABA's Standards for Imposing Lawyer Sanctions, such as whether (1) Winterton violated a duty to a client, the public, legal system or profession; (2) Winterton acted intentionally, knowingly or negligently; (3) Winterton's misconduct caused a serious or potentially serious injury; and (4) any aggravating or

---

21. Winterton seems to argue that the sanctions award is punitive because his conduct was only negligent and therefore, was not subject to sanctions. He relies on *Chapman v. U.S. Trustee (In re Aston–Nevada Ltd. P'ship)*, 409 Fed.Appx. 107 (9th Cir.2010) (unpublished) to support his position. However, in that case, the bankruptcy court's sanctions award, under Rule 9011 and its inherent authority, was premised on a finding that the attorney acted in bad faith, which the Ninth Circuit concluded was clearly erroneous given the evidence in the record. Here, we concluded that the sanction award was not based on clearly erroneous factual findings. The sanctions award was made pursuant to Rule 9011(c) and no finding of bad faith was found or required.

mitigating factors existed to justify the degree of discipline imposed.[22]

The bankruptcy court noted that Winterton "unwaveringly" pursued the improper bankruptcy, held himself out as a business and bankruptcy attorney with extensive experience before the bankruptcy court, and presented no evidence of any personal or emotional problems. After reviewing the record in this case, we conclude that the proceedings in the bankruptcy court were fair, the evidence solidly supported the bankruptcy court's findings, conclusions and sanctions award, and the amount of that award, $109,528, was reasonable as compensatory payment for Humitech's fees incurred as a result of Winterton's actions. Thus, the bankruptcy court did not abuse its discretion in awarding a sanction of $109,528 against Winterton.

Winterton argues, however, that the Stipulation filed in the California Litigation insulates him from the imposition of sanctions in this case. We disagree.

Winterton claims that he represented Grose, individually, by advising him about the implications of dismissing the adversary proceeding with or without prejudice. Based on this interaction, Winterton asserts he is one of Grose's attorneys and covered by the release terms of the Stipulation.[23] Winterton's argument is belied by his repeated statements that he represented only Blue Pine, not Grose. For example, he stated he was only Blue Pine's attorney in his Opposition to Sanctions dated October 23, 2009, and in response to discovery requests in January 2010, both of which were after the stipulation dismissing the adversary proceeding was entered. Winterton acknowledged this contradiction:

> I recognize I told the Court 100 percent that, you know, I had represented Blue Pine Group, and it wasn't until we were doing preparation that we discovered this [the signed stipulation to dismiss the adversary proceeding] that refreshed my memory.

Hr'g Tr. (February 4, 2010) at 154:23–155:1.

Furthermore, Winterton never produced a written agreement, consent, or retainer for the representation. The bankruptcy court found that Winterton "did not intend to represent, and therefore did not represent, either of the Groses in anything other than an unimportant ministerial capacity of facilitating one filing in their name." Memorandum Decision at 18. This finding is not clearly erroneous.

Winterton makes a lengthy argument that the bankruptcy court exceeded its jurisdiction by determining the scope of the Stipulation. Winterton asserts that "[b]ecause the issue of awarding attorney fees is subject to the state court interpretation of the release in the [Stipulation], Humitech's claim for attorney fees after entering the [Stipulation] is not one arising under the bankruptcy code." Appellants' Opening Br. at 23–24. Winterton's argument is misguided. The bankruptcy court did not determine the *scope* of the Stipulation or interpret the terms of its release. It simply made a factual finding regarding whether Winterton represented Grose.

---

22. At the time the bankruptcy court issued its decision, consideration of the ABA Standards was required by our holding in *In re Brooks–Hamilton,* 400 B.R. 238 (9th Cir. BAP 2009), in determining the reasonableness of sanctions. That holding has since been modified in *In re Nguyen,* 447 B.R. at 268.

23. Blue Pine was not a party to the Stipulation and Winterton does not argue on appeal that as attorney for Blue Pine he was included in the release.

Its finding that Winterton did not represent Grose was not illogical, implausible or unsupported by the evidence in the record.

Finally, Winterton raises a few arguments on appeal that were not raised before the bankruptcy court, including that (1) the bankruptcy court should have allocated the sanctions between himself, Irsfeld, Lichtenberger and the Groses, (2) $47,497 of the attorneys' fees was for communications between attorneys and was unreasonable; and (3) the bankruptcy court should have considered Winterton's ability to pay. "An issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'" *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) (quoting *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir.1989)). Because he did not make these arguments to the bankruptcy court, Winterton's arguments have been waived.

In closing, we note that Winterton continues, on appeal, to advocate his conviction that the bankruptcy court erred in interpreting Nevada law and concluding that the bankruptcy case was filed without corporate authorization. *See* particularly Appellants' Reply Brief. However, the finding that the bankruptcy was filed without corporate authorization was the underpinning of the Dismissal Order, which Winterton did not appeal. Accordingly, that finding is not subject to our review here. Our concern in this appeal is whether Winterton made an objectively reasonable inquiry into the legal and factual basis for the bankruptcy filing. As we concluded above, the bankruptcy court did not abuse its discretion in ruling that Winterton's conduct did not adequately satisfy the standard of Rule 9011 and was sanctionable in the compensatory amount of $109,528.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.